### JUAN ARCHIBEQUE *v.* JOSE MARIA MIERA.

DISTRICT COURTS HAVE NO STRICTLY APPELLATE JURISDICTION.—Under the organic act no court is clothed with appellate powers except the supreme court, and the legislature can not confer upon the district courts strictly appellate and revisory jurisdiction.

APPEAL TO DISTRICT COURT FROM JUSTICE, HOW TRIED.—On an appeal from a justice of the peace to the district court, the case is tried *de novo* on its merits in such district court, as a court of original jurisdiction, and not as an appellate court, without regard to the previous trial, and the parties may file accounts, set-offs, etc., as if the case had originated in the district court.

ERRORS IN TRANSCRIPT ON SUCH APPEAL.—The transcript on appeal from a justice of the peace to the district court is to be resorted to only to ascertain that the case originated and was tried in such justice's court, a judgment rendered, and an appeal properly taken, and it is not error for the court to refuse to dismiss the case for errors apparent in the transcript.

DISCREPANCIES IN TESTIMONY ARE FOR JURY.—It is the province of the jury to weigh the testimony and to decide as to apparent discrepancies therein.

NEW TRIAL BECAUSE VERDICT AGAINST EVIDENCE.—An application for a new trial because the verdict is against evidence is addressed to the sound discretion of the court, and should be denied, unless the finding of the jury is clearly against the weight of evidence, and the ends of justice obviously require that a new trial should be had.

APPEAL from the district court of the first judicial district for Santa Ana county. The case appears from the opinion.

*Joab Houghton,* for the appellant.

*S. B. Elkins, contra.*

By Court, DEAVENPORT, C. J.:

This action was commenced before Vicente Romero, a justice of the peace for the county of Santa Ana, by Juan Archibeque against Jose Maria Miera, for damages done to his wheat in his wheat-field by the cattle of defendant. The said justice of the peace gave judgment against said Miera, that he should pay said Archibeque forty almudes of wheat, from which judgment said Miera prayed an appeal to the district court for the first judicial district for the county of Santa Ana. In the district court the case was tried *de novo.* Defendant Miera, in the district court, made a motion to dismiss plaintiff's action for reasons apparent on the record, which the court overruled, and allowed plaintiff to file his account. The account filed is in the following words: "To damages caused by the cattle of said Jose Maria Miera, eating and destroying the wheat of the said Juan Archibeque, of the value of fifteen dollars, being forty almudes of wheat, in the year 1855." To the overruling of said motion, and permitting said account to be filed in said cause, the appellee assigns as error, if there be error in the record, in his joinder to errors assigned by appellant. To settle the practice in cases of appeals from the courts of justices of the peace to the district courts of this territory, it is deemed necessary to notice these points. The organic act, section 10, enacts, that the judicial power of this territory shall be vested in a supreme court, district courts, probate courts, and in justices of the peace. The same act sums up the jurisdiction of these several courts as follows: The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts, and of justices of the peace, shall be as limited by law, provided that justices of the peace shall not have jurisdiction of any matter in controversy where the title or boundaries of land may be in dispute, or when the debt or sum claimed shall exceed one hundred dollars. And the said supreme and district courts respectively shall possess chancery as well as common law jurisdiction.

Under the organic act no court in this territory is clothed

with appellate powers except the supreme court. The district court, courts of probate, and of justices of the peace are courts .of original jurisdiction. The jurisdiction of these several courts is thus limited by the organic law as to their appellate and original powers. It fixes their character; and that portion of the organic act which provides that the jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and of justices of the peace, shall be as limited by law, provided, etc., it does not confer upon the legislature the power to bestow upon the supreme court original jurisdiction, nor appellate powers upon the other courts therein mentioned. It only provides that the jurisdiction of the supreme court, with its appellate power, shall be as limited by law, and the jurisdiction of the other courts therein mentioned as courts of original jurisdiction shall be as limited by law.

It will be seen, by reference to the revised code, sec. 101, p. 164, that it is provided, that any person aggrieved by any judgment rendered by any justice may appeal by himself, his agent, or attorney, to the district court of the county where the same was rendered, under the provisions therein specified. Section 104, on same page, provides that the case upon such appeal shall be tried *de novo*, and the same rules shall govern the district court in said trial that are prescribed for the government of justices' courts. The appeal here allowed is only a remedy prescribed by law to enable parties who may conceive themselves aggrieved by the judgments of justices of the peace, to take their cases into the district courts as courts of original jurisdiction, to have their cases there tried *de novo* upon their merits. Section 103 requires that on or before the first day of the next term of the district court for the county, the justice shall file in the office of the clerk of said court a transcript of all the entries made in his docket relating to the case, together with all the papers relating to the suit: See Revised Code, 164. The motion made by appellee, in the court below, to dismiss the action for reasons apparent on the record had reference to the transcript sent up by the justice of the peace. The district court did not sit as a court exercising

appellate powers to revise and correct such errors in law as might appear in the transcript of the justice of the peace. The case had been brought by appeal from the court below to be tried *de novo*. The only office which the transcript by law can perform in the district court is to certify to that court that a certain case had originated in the justice's court, how said case was decided, and that the appeal had been regularly prayed for and taken to the district court. And upon such appeal being taken it is the duty of the justice of the peace to send up with his transcript all the papers relating to the case. The case then is regularly in the district court, to be tried *de novo* upon its merits; in other words, the district courts, ascertaining from the justice's transcript that the case had originated in the justice's court, and there having been tried and being brought properly before it by appeal, it pays no further attention to the transcript, but proceeds to try the case upon its merits, as if no trial had ever taken place. From this point the district court proceeds unshackled to try the case *de novo*, allowing the parties, not by way of amendment, but as in a case never before tried, to file their accounts, set-offs, or to do whatever is necessary to a full, clear, and legal representation of the real merits of the issue between the parties. The case in every respect is to be tried *de novo*, without regard to the proceedings of the justice of the peace, and the district court can only look to the transcript of the justice of the peace for the purpose of ascertaining if the case appealed is the one that originated there, and, after having done so, the transcript is of no further service than that of enabling the clerk to tax the costs in the case.

In disposing of this error, as assigned by the appellee, this court only does so to settle the practice in relation to appeals from justices of the peace to the district courts, a practice which is of growing importance, inasmuch as from the imperfect manner in which justice's of the peace keep their entries, if cases had to abide the transcript made out and sent to the district courts, scarcely one in twenty could ever be tried *de novo*. In overruling said motion to dismiss plaintiff's action, and in permitting him

to file his account, the district court committed no error, and its course is in accordance with law and in consonance with the practice as indicated and set forth above. The case proceeded to trial in the district court below, and the jury returned a verdict in favor of the defendant, Miera, and the court rendered up a judgment in his behalf. Plaintiff below moved for a new trial, which the court over-ruled. To which opinion of the court, in overruling said motion for a new trial, plaintiff excepted, and prayed an appeal to this court. Two grounds of error are assigned here by appellant: 1. That the district court erred in refusing to grant the motion for a new trial; 2. The district court erred in rendering judgment for appellee when it should have been for appellant. It is necessary to examine the testimony in this case to ascertain if there be error or not. Pablo Archibeque, a witness on the part of appellant, states that on one occasion he saw eleven head of cattle, large and small, belonging to the said Jose Maria Miera, jump into the wheat-field of Juan Archibeque, and he went and drove them out. It was in June, about the first. The field was damaged about the time he drove them out. Juan Archibeque came to the field and asked whose cattle they were, and witness said they were the cattle of Jose Maria Miera, and Archibeque drove them to his corral. This was in the summer of last year. This witness, it will be observed, states that this occured about the first of June, and that Juan Archibeque drove the cattle to his corral; and the very next witness, Juan Cermigo, introduced by plaintiff, proves that on one occasion in the same year he saw the cattle of Jose Maria Miera in the corral of Juan Archibeque, about twenty-one cows; about the last of June or the first of July. Here is a difference in point of time of a month, or nearly so, between the testimony of his first two witnesses, and as to the number of cattle, a difference of ten, the first witness stating that there were only eleven and the latter twenty-one cows.

These discrepancies between the statements of these two witnesses it was the legitimate province of the jury to weigh in connection with the other facts in the case, in making

up their verdict. Another fact connected with the testimony of Pablo is worthy of consideration in coming to an opinion in this case. He is the only witness who saw the cattle in the field of Juan Archibeque, and had the best opportunity to know the extent of damages done by the cattle, if any. He says the field was damaged, but does not state to what extent, or by whose cattle. Why did not the plaintiff prove by him the amount of damage done by Miera's cattle? The two witnesses, Diego Garcia and Francisco Garule, who assessed the damages of forty almudes of wheat, both state that when they went to the field they found the tracks of horses, burros, and cattle in the field, and that they assessed only the fresh damages; and Santiago Real, the witness who was directed by the justice of the peace to have the damages assessed, testifies that the ground was wet, and that in the field there were tracks of cows, horses, jackasses, and mules, and the ground being moist, all the tracks appeared fresh. The defendant introduced two witnesses, Salvador Jarmilla and Salvador Gonzales, who state that during the summer they had seen two horses of Don Miguel, and one burro, two oxen, and four mules of Juan Archibeque in the same wheat-field, and that, by the bidding of Miera, they had turned them out.

This was in substance all the testimony in the case. The jury below had the right to weigh all this testimony, and if from the fact that plaintiff's own stock had been in the wheat-field, and from the number of tracks of cows, horses, jackasses, oxen, and mules, they believed, from the fact of the ground being wet and all the tracks appearing fresh, it was impossible for fresh damages to be proved as having been done by Miera's cattle, and gave a verdict for defendant, the court below ought not to have disturbed their verdict.

It appears from the evidence in this case, that it was left to the jury to determine whether the damage complained of was done by Miera's cattle, or the cattle of plaintiff himself, or the stock of some third person. There is testimony that the cattle of plaintiff, with two horses of Don Miguel, had been driven from the same identical wheat-field. The two

witnesses who assessed the damages testified to the appearance of tracks of mules, jackasses, and horses in the same field, and they say they .only assessed the fresh damages. But Santiago Real testifies that he saw the same tracks, but the ground was wet, and all the tracks appeared to him fresh. Then here is testimony which it is the legitimate province of the jury to weigh and settle for themselves. Applications for new trials for verdicts against evidence are addressed to the discretion of the court, which is to be so exercised as to subserve the substantial ends of justice: *Laflin et al.* v. *Pomeroy*, 11 Conn. 440. If it .does not clearly appear that the finding of the jury is against the weight of evidence, or that it is necessary to the justice of the cause that there should be a new trial, or that the result would or ought to be different, the court will not disturb the verdict: Id. The testimony in this case raises a doubt whether the damage done to the wheat of plaintiff was done by Miera's cattle or by the cattle of plaintiff, and it is clearly the province of the jury to determine the doubt.

As there is no clear preponderance of testimony against the verdict, this court will not disturb it, but the judgment must be affirmed.