THE TERRITORY OF NEW MEXICO, Appellee, v. JOHN J. WEBB, Appellant.

*January 28, 1881.*

MURDER.   (1) *Verdict, when jury need not fix punishment.*
SAME.   (2) *Finding of jury not set aside, when.*
NEW TRIAL.   (3) *Discretionary with court.*
PARDON.   (4) *Power of governor to grant.*
MURDER.   (5) *Trial—Omission to ask prisoner if he has anything to say, before sentencing him.*
PRACTICE.   (6) *Presumption of regularity of proceedings.*

1.  A jury finding a verdict of guilty of murder in the first degree, need not assess the punishment.
2.  Where the testimony is conflicting, but the verdict of the jury is sustained by positive evidence, it will not be set aside as being contrary to the evidence. PARKS, J., dissenting.
3.  A motion for a new trial is addressed to the discretion of the court.
4.  The governor of the territory has discretionary power to grant a full pardon or mitigate the punishment, and in determining the question of executive clemency the governor may properly consider matters that are beyond the province of the supreme court.
5.  It is not error for the court to omit to ask, before pronouncing final judgment, whether the prisoner has anything to say why sentence should not be pronounced against him, especially where the omission does not appear affirmatively from the record, but is only presumed from the fact that the record is silent as to such question. PARKS, J., dissenting.
6.  A court of general jurisdiction having obtained jurisdiction, all the details of a trial are presumed to be regular and sufficient to sustain judgment until the contrary is shown.

Appeal from the District Court of San Miguel county.

The facts appear in the opinion of the court.

*S. M. Barnes*, for appellant.

The finding and verdict of the jury and the judgment and sentence of the court thereupon are contrary to law and void. The jury found the defendant guilty of murder in the first degree, but failed to assess the punishment, as required by law. The court assessed the punishment without authority of law. See Laws of New Mexico, by L. Bradford Prince; Practice in Criminal Cases; Kearney Code, sec. 22, p. 289; Wharton's Criminal Pleading and Practice, 8th edition, sec. 752, chap. 15: "Where a statute requires in the verdict a designation of a degree, or the specific assessment of a punishment, a general verdict without such designation or assessment will be a nullity," and the numerous cases cited by Wharton, as above, sustain these positions.

The verdict of the jury being contrary to the law and evidence, will be set aside: Wharton's Crim. Plead. and Practice, sec. 813, chap. 18, p. 551, and cases cited therein.

Territory of New Mexico v. Webb.

The appellant should have been asked before the sentence was pronounced against him, if he had anything to say why sentence should not be pronounced against him, and it is essential that it should appear on record that this was done. The transcript of the record does not show that he was so asked. See, in support of this view, Wharton's Crim. Plead. and Practice, sec. 906, chap. 19, p. 604, and the numerous adjudged cases there cited. This is the doctrine and practice at common law in all capital felonies.

A new trial should be granted, where the court below, as it did in this case, allowed the prosecuting counsel, in his closing speech, to charge the defendant with other offenses besides that on trial. The court should have not permitted this, even though no objection was made by appellant's counsel. See Wharton's Crim. Pleading and Practice, sec. 853, chap. 18, p. 584, and adjudged cases therein cited.

The jury in this case was controlled by prejudice and popular excitement against appellant at and before the trial, and the facts in this case, as developed in the transcript, show that the appellant did not obtain a fair and impartial trial, and should not, from the law and evidence, have been found guilty and sentenced to be hung. The verdict of the jury was the result of misconduct of the sheriff at the close of the argument, in announcing improperly and untruthfully, in the presence and hearing of the court and jury, that defendant's friends were present to rescue him. The jury retired to consult without this announcement being denied or explained. The jury, by the conduct of the sheriff, as above stated, and the appeals of counsel to popular prejudice against defendant, were induced to render an unjust verdict against him. These facts entitle the defendant to a new trial: Wharton's Crim. Plead. and Practice, sec. 561 and cases therein cited; secs. 849, 853, 889, and the 8th Cal. Report, 441, and adjudged cases cited.

The appellant was a peace officer of San Miguel county,

N. M., at and before the alleged killing. He was justified in attempting to disarm the deceased, and in killing him in self-defense. See Laws of N. M., acts 1871, 1872, p. 59, and acts 1873 and 1874, p. 27.

It was made the positive duty of appellant, as a police officer under said laws, to arrest and disarm deceased, and if he had failed in this he would have been subject to indictment and punishment under said laws above referred to. See also Prince's General Laws of New Mexico, p. 315. The appellant, under said laws of New Mexico, was authorized and empowered as a private citizen to arrest and disarm the deceased. See Prince's Gen. Laws N. M., p. 314, sec. 9.

The proof in this case fully shows that deceased was in a public drinking saloon at a late hour in the night, acting in a boisterous, improper manner, armed with a pistol, a deadly weapon, and threatening to kill appellant, and when appellant attempted to disarm him, the deceased made an effort to shoot the appellant and refused to be disarmed. The proof shows clearly that the appellant shot deceased in his own necessary self-defense. A new trial should have been granted him: Wharton on Homicide, secs. 501 to 507, inclusive, and authorities cited; Wharton's Criminal Law, secs. 1021 and 1026. The charge of the court below was contrary to law, and, in fact, was a comment upon the evidence.

*Breeden & Waldo,* for appellee.

*First.* 1. The verdict of the jury, and the judgment and sentence of the court thereon were correct, and sufficient in form. The verdict was murder in the first degree, and the punishment is fixed by law: Comp. L. of New Mexico, sec. 2, p. 318. 2. The statute requiring the jury to assess the punishment, could not apply to this case, in which the jury had no discretion as to the punishment to be imposed, and no power to vary or change the punishment prescribed by law. 3. The statute provides that the jury shall assess the punishment. The language clearly implies a power and discretion

Territory of New Mexico v. Webb.

in the jury in determining the amount or character of pun-ishment to be imposed; a reference to the judgment of the jury as to the punishment to be inflicted. To assess means to ascertain, to determine, to fix : Bouvier's Law Dic-tionary, Title, " To assess," " Assessment." 4. There is no ambiguity or uncertainty in the language used, and the words of the statute are to be taken and understood in their general, usual and well-known meaning and acceptation: *Beardstown v. Virginia*, 76 Ill., 34 ; *Dunn v. Reid*, 10 Peters (U. S.), 524. 5. The jury could not vary the punishment pre-scribed by the statute. It was not their province to deter-mine or ascertain the punishment. The statute must have a reasonable application, and the verdict in this case was all that was necessary or required by law : 1 Bish. Proced., 834 ; 2 Bish. Proced., 625 ; Littell's Select Cases (Ky.), 419.

*Second.* 1. The verdict was fully warranted by the evi-dence. The case was fairly submitted to, and determined by the jury. The most that can be said for the appellant is that there was a conflict of evidence ; this it was for the jury to pass upon, taking into consideration all the evidence before it, the credibility of witnesses, their manner and appearance on the stand, etc. ; this the jury did, and it is not for the court to review their finding. 2. The evidence for the pro-secution being amply sufficient to warrant a conviction, this court will not disturb the verdict merely because there was conflicting and contradictory evidence, even if the court itself might upon the whole case disagree with the finding of the jury : Hilliard on New Trials, sec. 8, p. 46 ; *Id.*, sec. 11, p. 50 ; secs. 1 and 2, p. 91, sec. 3, p. 92 ; p. 6 ; *Winfield v. The State*, 3 Greene, *Id.*, 339 ; *The State v. Elliott*, 15 *Id.*, 52 ; 53 Ill., 509 ; *People v. Ah Loy*, 10 Cal., 301 ; 4 Ga., 335 ; 1 Scam., 130 ; 15 Ia., 72.

*Third.* 1. The omission to ask the defendant, if he had anything to say why sentence should not be pronounced against him, was unimportant, inasmuch as the purpose of

such question was to enable him to offer anything he might present in mitigation of punishment, which in this case could have availed nothing, as the court had no power to mitigate or reduce the punishment, and the reason for such practice was removed by the statute admitting the defendant to testify, and the practice of hearing affidavits in support of the motion for a new trial. In any event, all that could result from this objection is, that the cause should be remanded for re-sentence upon the verdict already found.

*Fourth.* 1. The defendant cannot take advantage of the alleged fact that improper remarks or unfair statements or arguments were made to jury by counsel for the prosecution, because he made no objection and gave the court and counsel no opportunity for the correction thereof at the time; and the objection was fully considered on the motion for new trial by the judge before whom the cause was tried, and who saw and heard all that occurred: 57 Ga., 42; Wharton's Crim. Pleading, 560–577. 2. And, besides, the objection only appears in the record in connection with the motion for a new trial, which motion and the matters connected therewith, were determined by the court below, and its ruling thereon is not subject to review in this court: *Pate v. The People,* 8 Ill., 644; *Holliday v. The People,* 9 Ill., 111; 37 Pa. St., 168; 51 Pa. St., 332. 3. The common law was the rule of practice: Comp. L., sec. 18, p. 194. The overruling of a motion for new trial could not be assigned for error at common law.

*Fifth.* 1. There is nothing to · show that the jury was controlled or influenced by popular prejudice, feeling or excitement, but their verdict was according to the evidence, or fully warranted by it. That being the case, this court should not disturb the verdict. 2. That question, as well as the alleged action of the sheriff, was presented, considered and determined upon the motion for a new trial, before the judge who saw, heard, and was familiar with all that trans-

pired at the trial. Both were questions of fact, presented on the motion for new trial, and determined by the court. 3. Besides, they are only presented in connection with the motion for a new trial, and not properly brought into this court for, or subject to review.

*Sixth.* 1. The statements in the appellant's brief, as to his being a police officer, and the right or wrong of his action, are all matters of evidence fairly submitted and determined by the jury, and in this case not subject to review by this court.

*Seventh.* 1. The instructions to the jury by the court below were correct and unexceptionable. The appellant does not except to any specific portion thereof, but makes a sweeping exception to the whole charge. 2. Upon such an exception this court can not properly review the charge. A general exception to the whole charge is not admissible, and can avail nothing.

OPINION OF THE COURT: The facts are as follows:

At the March, 1880, term of the district court of the first judicial district sitting in and for the county of San Miguel, John J. Webb, the defendant below and appellant here, was indicted by the grand jury for the murder in the first degree of Michael F. Killiher. To this indictment, the defendant appeared and pleaded not guilty.

The case was brought to trial at this same term, and upon the conclusion of which the jury found the following verdict:

"We, the jury, upon our oaths do say that we find the defendant guilty of murder in the first degree, in manner and form as charged in the indictment."

Thereupon, at the same term, the defendant interposed a motion for a new trial, which was regularly brought to a hearing and overruled by the court. The court then pronounced sentence and judgment against the defendant, as follows:

" It is therefore considered and adjudged by the court that the said defendant, John J. Webb, be taken hence to, and closely confined in the common jail of the county of San Miguel, until the ninth day of April, in the year one thousand eight hundred and eighty ; that on said day, between sunrise and sunset, he be taken from said jail to some spot in said county, to be selected by said sheriff, and then and there be by the said sheriff hanged by the neck until he be dead."

From this sentence and judgment the case is here by appeal.

The record of the proceedings does not disclose the fact that any exceptions were taken in behalf of the defendant during the trial, though at every step during the progress of the proceedings subsequent to the filing of the indictment, the defendant was aided by counsel.

All the evidence adduced on the trial was settled by bill of exceptions and is before us as part of the record.

Several grounds of error are assigned by the appellant's counsel, on which they claim the judgment ought to be reversed. These grounds we have reviewed in the order in which they occur. The first assignment of error is, that the verdict and judgment is contrary to law and void, because the jury found the defendant guilty of murder in the first degree but failed to assess the punishment.

This question we have already passed upon at the present term, in the cases of the *Territory v. Young, ante,* page 93, and the *Territory v. Romine, ante,* page 114, in which we decided that this was not error under our statute. The opinions of the court delivered in those cases, so far as this question is concerned, we adopt and affirm in this.

The second assignment of error is that the verdict of the jury was contrary to the law and evidence.

As to the legality of the verdict, we have already decided. It cannot be said that the verdict was contrary to the evidence because there was positive evidence, which if true, fully justified the verdict. The testimony of the witnesses was

conflicting, and the most that could be claimed on behalf of the appellant is that the verdict was contrary to the preponderance of the evidence.

The prisoner had the benefit of a motion for a new trial. This was addressed to the sound discretion of the court below. The chief justice of this court, who presided as judge in that court, heard all the testimony as it was uttered by the witnesses. He, as well as the jury, had the opportunity to notice the manner, and to some extent the character, of each witness on the stand. They heard the inflections of his voice, saw the varying expressions of his features, observed the language of his gestures, took in the general style and make up of each witness, and observed, perhaps, a number of other like things and incidents which though comparatively insignificant in themselves, yet, sometimes cast a flood of light upon the question of credibility. All this is an utter blank to the other members of this court, and renders them much less competent to weigh this conflicting evidence should they attempt to do so.

There is nothing in the record that casts the slightest suspicion on the integrity of the jury; and the fact that they found the defendant guilty of murder in the first degree, and that the court below refused a new trial, leaves us to infer that in the minds of judge and jury trying the cause there was no reasonable doubt of the prisoner's guilt.

We might, were it necessary or proper, in addition to positive evidence, review and critically analyze the circumstances attending the killing of the deceased, and point out, when brought to the test of human experience, how several incidents then occurring would naturally suggest bad faith on the part of the prisoner, and indicate, with some degree of force, a premeditated design to kill before he approached or uttered a word to the deceased.

To sustain the proposition that a conviction will be set aside when contrary to the weight of evidence, the appel-

lant's counsel have cited as authority, Wharton's Crim. Pl. and Pr., 8th ed., 551, sec. 813, where that author, under the head of New Trials, which are always within the sound discretion of the court, lays down this principle and applies it more especially to that class of cases where any of the material allegations of the indictment remain unproved, but in the conclusion of that section the same author says: "If, however, there be conflicting evidence and the question be one of doubt, it seems the verdict will generally be permitted to stand; and this though the court may differ from the jury as to the preponderance of the evidence." In support of this latter proposition, that author cites above thirty adjudications.

If this be the rule on a motion for a new trial which is addressed to the discretion of the court trying the cause where the evidence is conflicting, with how much more strictness ought the rule to be adhered to by an appellate tribunal, to which like this court an appeal from an order overruling a motion for a new trial does not lie. No such appeal is ever allowable except under express provisions of statutes.

Where the evidence is contradictory and the verdict is against the weight of evidence, though a new trial may be granted by the court trying the cause in their discretion, the decision denying the same is not examinable by an appellate court: *State v. Cruise*, 16, Mo. 391; *Herbon v. State*, 7 Tex., 69.

If there had been no part of the evidence which if true would sustain the verdict, then an error of law would have been apparent from the record upon which we could reverse the judgment.

Under the rules governing the judicial administration of the criminal laws of this territory, this court can only review and determine errors of law appearing upon the face of the record: *Cathcart v. Commonwealth*, 37 Penn., 108. It is

·quite beyond the scope of its duties to determine the credibility of witnesses testifying in a lower court, the weight of their testimony aside from the law of evidence, or the reconciliation of conflicting testimony.

It would, indeed, be establishing a precedent vicious in its nature and bad on principle if this court, sitting as an appellate tribunal to determine errors in law, should thus invade the province of the jury and attempt to determine these questions of fact from conflicting testimony.

If the affirmance of the judgment below should necessarily follow the overruling of this objection to the verdict now under consideration, such affirmance would not necessarily determine the fate of the prisoner.

The law has humanely reposed in the judgment and conscience of the governor the discretionary power to grant a full pardon or mitigate the punishment.

In determining the question of executive clemency, the governor may properly consider matters that are beyond the province of this court; and we think the ends of justice will be much better subserved by leaving the responsibility here, than that we should deviate from the course which the policy of the law has marked out for· us to pursue.

. We hold, therefore, that the objection that the verdict is contrary to the evidence, ought not to be sustained in this case.

Cases, however, might arise wherein, though there might be some evidence to sustain every material allegation of the indictment, yet at the same time the evidence might be so very slight, as to justify an appellate court in reversing a judgment rendered thereon.

The third assignment of error is that before final judgment was pronounced, the prisoner was not asked if he had anything to say why sentence should not be pronounced against him. As authority in support of this proposition we are referred to said ed. of Wharton's Crime Pl. and Pr. 604, sec. 906, where the rule at common law is shown to be that

in capital felonies this was not only required, but that it should appear of record. But that author in the same section observes that "in several of the states the rule is that the absence of such an averment will require the remittal by a court of error of the record to the trial court for a new sentence." In other states the failure of the record in this respect has been held not to be ground for a refusal, though it is agreed on all sides that " the form is proper to be used."

" But this address is not to be viewed as an invitation to the defendant to bring forward additional motions in arrest of judgment, or for a new trial. Those motions have, according to the usual practice, been already made and disposed of.

" The object of the address is to give the defendant the opportunity to personally lay before the court statements which, by the strict rules of law, could not have been admitted when urged by his counsel in the due course of legal procedure; but which, when thus informally offered from man to man, may be used to extenuate guilt and to mitigate punishment."

It seems by this that the rule has not been uniformly adopted as common law among the various states of the Union. From the authorities cited, the courts of about as many states, holding one way as the other, and that the only benefit that can accrue to the defendant under any circumstances is to extenuate his guilt, or to mitigate his punishment.

This rule was adopted and subsequently became a part of the criminal code when the accused could not be a witness, to tell the court and jury anything in mitigation of punishment, or in extenuation of his guilt, and at a time also when such extenuation and the grade of punishment rested largely in the power of the court.

In cases of capital homicide under our statute, if the accused is found guilty of murder in the first degree, the

only opportunity he would have to make any impression on the court in extenuation of his guilt, and therefore in mitigation of the punishment, would be on a motion for a new trial. But, if after this question has been disposed of, and the prisoner's guilt has been fixed and determined at murder in the first degree, then there can be no extenuation of guilt, or mitigation of the punishment by the court. While in the lower grades of homicide where the jury assesses the punishment, and determines the grade of the offense, the power of the court over such extenuation and mitigation is gone and the prisoner's address to the court utterly useless.

But the fact that under the law the prisoner was a competent witness, and on the trial in this case actually gave his testimony in his own behalf, would seem to supersede any occasion for his personal address to the court in extenuation of his guilt or in mitigation of his punishment.

Under our peculiar statute as to homicide and the law of Congress applicable to the territories, rendering the defendant in criminal prosecutions a competent witness in his own behalf, we may as well concur with the courts of those states that hold that the non-observance of this rule as implied by the silence of the record is not ground for reversal.

On principle it would seem that the observance of the rule ought to be presumed unless the record, by some statement, shows to the contrary. Upon the ground that in a court of general jurisdiction, after acquiring jurisdiction, all the details of a trial are presumed to be regular and sufficient to sustain judgment until the contrary be shown.

In the case of *Cathcart v. The Commonwealth, supra,* defendant was under indictment for murder in the first degree. The record did not show affirmatively that the prisoner had any counsel during the trial. This was one of the assignments of error. On this point the supreme court of Pennsylvania held, that they could not presume that the prisoner was denied counsel because the record did not show

that he had counsel, notwithstanding the constitution of that state secured that right to every one indicted for crime, and that it was not ground for reversal.

It would be immeasurably more important to a prisoner on trial for a capital felony to be aided by counsel than that, after he had testified in his own behalf and had been heard on a motion for a new trial, he should be asked if he had anything further to say why sentence should not be pronounced.

If the silence of the record in regard to counsel is not ground for reversal, it would seem on principle that such silence in regard to the matter now being considered should not be ground for reversal. Notwithstanding this ruling, we would not advise that a custom so honored by time and high authority should be disregarded under any circumstances.

The fourth assignment of error is that the court below allowed the prosecuting counsel, in his address to the jury, to charge the defendant with other offenses than the one on trial.

As to this objection, it is sufficient to say that upon examination of the record we do not find the fact to be as assumed by this assignment of error.

There are several other assignments of error based upon *ex parte* affidavits used on the motion for a new trial, and on certain facts assumed to be true, but which relate to issues of fact for the jury. These all relate to matters which are not properly before us for review.

We discover no error in the record.

The judgment is affirmed.

PARKS, J., dissenting: I dissent from the opinion of the court for the following reasons:

*First.* The rule of the common law that a verdict against the weight of evidence should be set aside in criminal cases, is a just one and ought to be followed by the courts.

In case of crimes punishable with death, if the trial court

disregards this rule, its action ought not to be held binding on this court.

In this case the killing was admitted, and the only question was as to the degree of the defendant's guilt. Upon this question the verdict of the jury was, as I think, against the weight of the evidence.

*Second.* The practice of asking the defendant, after conviction, if he has anything to say why sentence should not be pronounced against him, is founded in justice, reason and humanity. It is sanctioned by long and almost immemorial usage, and should be considered too well settled to be shaken by these cases in which it has been held unnecessary. It should be held both in the theory and practice, a sacred right for a man convicted of murder and about to be sentenced to an infamous death, to be heard before he is sentenced. In this case this right was not recognized.

*Third.* With this view of the law and in view of the state of things at present existing in this territory, I am not willing that this man's fate should depend upon the very uncertain action of any governor, no matter how high may be his qualifications and character.

For these reasons I am unable to concur in the opinion of the majority of the court.