679 P.2d 804

**STATE of New Mexico, Appellant,**

v.

**John Paul CHAVEZ, Appellee.**

**No. 15145.**

Supreme Court of New Mexico.

Jan. 13, 1984.

Paul Bardacke, Atty. Gen., Anthony Tupler, Heidi Topp Brooks, Asst. Attys. Gen., Santa Fe, for appellant.

Janet Clow, Chief Public Defender, Lynne Corr, Asst. Appellate Defender, Santa Fe, for appellee.

## OPINION

RIORDAN, Justice.

This is the second appeal by the State in this case from the trial court's *sua sponte* grant of a new trial after a jury found Defendant John Paul Chavez (Chavez) guilty of two counts of first degree murder, of aggravated battery with a firearm, and of unlawful taking of a firearm into a licensed liquor establishment. We granted certiorari and reverse.

The issues we address are:

I. Whether the Court of Appeals erred in holding that pursuant to NMSA 1978,

Crim.P.Rule 45 (Repl.Pamp.1980), the trial court may weigh the evidence and the credibility of the witnesses in determining whether to grant a new trial.

II. Whether the trial court erred in granting a new trial on the presumption that the first degree murder instructions were confusing to the jury when those instructions have been approved by the New Mexico Supreme Court.

In the first appeal, the Court of Appeals affirmed the trial court's granting of a motion for a new trial. We granted certiorari and reversed the Court of Appeals remanding the case to the trial court with instructions that the trial court enter an order fully setting forth the grounds for the trial court's *sua sponte* motion for a new trial. *State v. Chavez*, 98 N.M. 682, 652 P.2d 232, (1982) (*Chavez I*).

On remand, the trial court entered an order that provided in pertinent part the following grounds for granting a new trial:

1. The overwhelming weight of the evidence as discussed in paragraph 4 was against a conviction for first degree murder and, therefore, *in the interest of justice a new trial was ordered.*

2. The Court's instructions were confusing to the jury. Instruction No. 2 and Instruction No. 6 set forth the State's theories of first degree murder for Benny Ramirez and Romulo Ortega. The Court instructed on willful, deliberate, premeditated murder and murder based upon acts greatly dangerous to the lives of others, indicating a depraved mind. There was no direction in either instruction that the jury had to reach a unanimous verdict on only one theory of first degree murder.

Instruction No. 10 made an attempt to rectify this confusion but it made no specific reference to the specific element Instructions No. 2 and 6. Also, Instruction No. 10 did not prevent the jury from finding different theories of guilt as to each decedent since the jury was not instructed that the theory of guilt must be consistent for both decedents. For example, the jury could find defendant guilty of premeditated, deliberate first degree murder with regard to decedent Rodriguez and 'depraved mind' first degree murder for decedent Ortega. The evidence did not allow for differing theories of guilt for each decedent.

The confusion was compounded by Instructions No. 2 and No. 6 since there is no definition of 'depraved mind' making the distinction between the alternative theories difficult if not impossible to determine.

3. The jury was confused as shown by the fact that they returned an affirmative response to a firearm interrogatory after finding the defendant guilty of two counts of first degree murder and being told in Instruction No. 25 that such an interrogatory applied only to murder in the second degree or voluntary manslaughter.

4. Conflicts between various versions of the incident caused the Court considerable concern. Three witnesses for the State, who were patrons of the bar at which the shooting occurred, denied any altercations with the defendant prior to the shooting. The defense called the manager of the bar as part of its case. The manager witnessed three separate altercations between Hector Rodriquez, one of the State's witnesses, and the defendant. The defense also called the bartender. The bartender witnessed an additional, separate altercation immediately before the shooting as the defendant left the bar. One of the State's witnesses denied even seeing the defendant in the bar and Mr. Rodriquez stated he neither witnessed nor participated in any fights. The evidence in the case, including expert testimony of stippling on the decedent's body, established elements of provocation and self-defense. Evidence also established that the decedents were not strangers to the defendant. The depraved mind theory of first degree murder requires an element of anonymity between the defendant and the decedents. The depraved mind theory of first degree murder was not sup-

ported by the evidence. Since the Court cannot say that the jury did not find the defendant guilty upon a theory of depraved mind murder, a new trial is warranted.

5. Count III, aggravated battery with a firearm enhancement, occurred at the same time and place as the incidents involved in Counts I and II and therefore, *in the interest of justice*, this Court should also be retried with Counts I and II. (emphasis added.)

Thereafter, the State again appealed to the Court of Appeals raising five specific issues: 1) whether the trial court erred in granting a new trial based on its speculation that the jury may not have been unanimous in its theory of first degree murder; 2) whether the trial court erred in concluding as a matter of law that anonymity is an element of the depraved mind theory of first degree murder; 3) whether the trial court erred in ordering a new trial because the jury signed the firearm interrogatory despite the instruction to make a firearm determination only if they found Chavez guilty of second degree murder or voluntary manslaughter; 4) whether the trial court erred in ordering a new trial on Count III solely because Count III occurred at the same time and place as Counts I and II; and 5) whether the trial court erred in ordering a new trial on the basis of conflicting evidence.

## I. Rule 45

■ The Court of Appeals determined that the trial court did not abuse its discretion in granting a new trial, and remanded the case for a new trial. The Court of Appeals held that, "under Rule 45, which allows a trial court to grant a new trial 'if required in the interest of justice,' a trial court may grant a new trial when it has a strong conviction that the jury has erred", and that "[i]n determining whether to grant a new trial the court may weigh the evidence and the credibility of witnesses."

In *Chavez I*, we recognized that a trial court has broad discretion in granting or denying a motion for new trial, and that

such will not be reversed absent a clear and manifest abuse of that discretion. The Court of Appeals' decision, however, would allow the trial judge to sit in judgment of a criminal case as the proverbial *thirteenth juror*. Pursuant to the Court of Appeals' decision, the trial judge, after a jury verdict of guilty, could reweigh the evidence and the credibility of the witnesses, and because of considerable concern, overturn the verdict and award a new trial in the interest of justice. We reject this proposition and specifically agree with the Washington Supreme Court in *State v. Williams*, 96 Wash.2d 215, 221–222, 634 P.2d 868, 872–873 (1981) (citations omitted) (quoting in part *Rettinger v. Bresnahan*, 42 Wash.2d 631, 633–634, 257 P.2d 633, 635 (1953)), that the trial court's discretion to grant a new trial:

[D]oes not give a trial court license to weigh the evidence and substitute its judgment for that of the jury, simply because it may disagree with the verdict. In this state a trial judge is not deemed a 'thirteenth juror'.

It is the province of the jury to weigh the evidence, under proper instructions, and determine the facts. It is the province of the jury to believe, or disbelieve, any witness whose testimony it is called upon to consider. If there is substantial evidence (as distinguished from a scintilla) on both sides of an issue, what the trial court believes after hearing the testimony, and what this court believes after reading the record, is immaterial. The finding of the jury, upon substantial, conflicting evidence properly submitted to it, is final.

*Accord, People v. Gennings*, 196 Colo. 208, 583 P.2d 908 (1978).

■ Therefore, having reviewed the record, we determine that the trial court abused its discretion in weighing the evidence and credibility of the witnesses, and hold that the Court of Appeals erred in upholding this as a basis to award a new trial for the murder convictions and the aggravated battery conviction.

## II. Jury Instructions

In addressing the jury instructions, the Court of Appeals merely stated that "[t]he confusion [by the jury about the instructions] is apparent from the answer to an interrogatory which the jury had been instructed to answer only if it found second degree murder or voluntary manslaughter." The Court of Appeals therefore determined that on retrial the trial court would have the opportunity to correct faulty or confusing instructions.

 The Court of Appeals is to follow the jury instructions promulgated by the Supreme Court; they are not free to abolish uniform jury instructions approved by this Court. *State v. Scott,* 90 N.M. 256, 561 P.2d 1349 (Ct.App.) *cert. denied,* 90 N.M. 637, 567 P.2d 486 (1977). In addition, the Court of Appeals is bound by the Supreme Court Order approving the instructions, and has no authority to set the instructions aside. *Id.* The general Use Note to the Uniform Jury Instructions provides in part that, "[i]n no event may an elements instruction be altered or an instruction given on a subject which a use note directs that no instruction be given." Therefore, we determine that the trial court erred in finding approved instructions were inadequate and confusing as a basis for the new trial. The trial court's disagreement with the required manner of instructing the jury is not an appropriate ground upon which a new trial may be granted, if those instructions are approved by this Court.

## Conclusion

The decision of the Court of Appeals and the trial court are reversed. This case is remanded to the trial court. Chavez shall file his notice of appeal, should he exercise his right to do so, no later than ten days after the date of the mandate in this case.

IT IS SO ORDERED.

FEDERICI, C.J., and PAYNE and STOWERS, JJ., concur.

SOSA, Senior Justice, respectfully dissents.

SOSA, Senior Justice, dissenting.

I hereby respectfully dissent and adopt the Court of Appeals opinion in toto, as my own and ask that it be published in its entirety.

No. 6029.

Court of Appeals of New Mexico.

Sept. 6, 1983.
OPINION

NEAL, Judge.

When a trial court determines that the overwhelming weight of the evidence is against the conviction may it grant a new trial under NMSA 1978, Crim.P.R. 45 (Repl. Pamp.1980)?

The defendant was convicted of two counts of first degree murder, NMSA 1978, § 30–2–1(A) (Cum.Supp.1982) one count of aggravated battery, NMSA 1978, § 30–3–5 and one count of unlawfully carrying a firearm in a licensed liquor establishment, NMSA 1978, § 30–7–3. On its own motion the trial court granted a new trial, Crim. P.R. 45, and the State appeals. *See State v. Chavez,* 98 N.M. 682, 652 P.2d 232 (1982).

The court granted a new trial on the first degree murder counts and on the aggravated battery count. It left the conviction for unlawfully carrying a firearm in a licensed liquor establishment intact. In an order outlining grounds for a new trial the trial court stated that "[t]he overwhelming ... weight of the evidence ... was against a conviction for first degree murder and, therefore, in the interest of justice a new trial was ordered." It further felt that certain instructions may have confused the jury and, because the alleged aggravated battery occurred at the same time and place as the alleged murders, that count should also be retried.

The evidence was conflicting and, at times, odd. Two things are certain. On July 3, 1980, Angel Morales, Hector Rodriguez, Benny Ramirez and Romulo Ortega went to the A & P Bar in Albuquerque to

drink and play pool. Before the night was over the defendant shot Benny, Romulo and Angel, killing Benny and Romulo, and wounding Angel.

The State presented three witnesses, all of whom were friends of the victims. The testimony of the three witnesses, Angel, Hector and Jose Hernandez, essentially established that the defendant waited outside the bar and shot Benny, Romulo and Angel when they came out the door.

The defendant claimed self-defense. He presented two witnesses, Howard Dow and Arthur Dow, both bartenders at the A & P, who partially corroborated his story. Because the evidence is crucial in this case we review it in detail.

Angel testified that he and Benny had been drinking beer and playing pool that day. Their third stop was the A & P Bar, where vodka became the drink of choice. Romulo and Hector joined them about 9:00 p.m. Angel said that none of them fought or argued with anyone in the bar. They all left about 10:00 p.m. because they had to go to work the next day.

When they stepped outside the defendant started shooting at them. Romulo and Hector started running. Benny was shot when he suggested that the defendant calm down. Angel said that the defendant then shot him, although at the time he did not know that he or Benny had actually been shot. Angel got mad and scared and started beating up the defendant. Then someone pulled him away and told him the gun was a fake. The defendant was beaten so badly he could not move. After beating the defendant, Angel went over to Benny. Benny told Angel he was hurt but Angel thought he was faking. Angel took the gun away from the defendant and went home. He said he returned to the bar when he realized the gun was real and he had been shot.

On cross-examination the defense brought out that in his statement to the police Angel said that Benny had been arguing with a man in the bar about pool table privileges and money. That is why they decided to leave. Hector also argued

with the man, but they straightened it out. Romulo had to grab Hector on the way out because Hector was still arguing with the man. On redirect, Angel again said that the disagreement over the pool game and money had nothing to do with the defendant.

Hector also testified for the State. He said that Romulo had been arguing with someone but he did not know what the argument was about. They all decided to leave and go home to bed. When they got outside the defendant, leaning against a window, said something to Romulo and opened fire. Hector ran home. He said there were no arguments with the defendant, and that he had never seen the defendant before that night when he saw the defendant in the bar. On cross-examination defense counsel reminded Hector that he had told the grand jury he had never seen the defendant in the bar.

Jose Hernandez, another State's witness, said that he played pool and drank beer with Benny that afternoon, and then saw Angel, Benny, Hector and Romulo that night at the bar. He said he had eleven drinks and was fairly drunk. He never saw any arguments or fights, nor did he see the defendant in the bar that night.

The defendant testified that he went to the A & P Bar about 7:50 p.m. He was armed because several weeks before a friend of his had been shot and killed at his (defendant's) home. He was sitting at the bar when a man asked him if he wanted to play pool. He declined. The man acted like he wanted trouble, calling him names and cursing. The defendant was not sure who the man was except that it was one of the witnesses who had testified earlier. The defendant got up to leave because of the man. Two or three men followed him and one of them kicked him in the back. He turned around and another man struck him in the face. The man who hit him was also a witness in the trial.

The defendant went outside and hit someone. He saw two or three men coming at him and he heard someone say, "Go

get a gun." Then they were on top of him, beating him up. He pulled his gun and fired a warning shot straight up. He then started shooting because he thought they were going to kill him. He was not shooting at anyone in particular. He had never used a gun before.

This testimony was contradicted in part by a statement the defendant gave to Detective Jasler. In the statement the defendant said he was shooting at the men before they started beating him up. He shot one while he was running toward a parked truck and the others as they were running toward him.

The defendant's testimony was partially corroborated by Howard Dow, a bartender at the A & P Bar. Dow saw Hector and Romulo talking to the defendant. It seemed to him that Hector was the aggressor. Hector kept going over to the defendant and arguing. Romulo tried to pull Hector away several times. At one point Dow told Hector to leave the defendant alone. When Hector and Romulo were leaving, Romulo had Hector by the arms from behind and was leading Hector out the door. Ten to fifteen people were also leaving. The crowd looked like they expected a fight. Dow did not see the defendant leave, but within five or ten seconds after the crowd left he heard shots.

Arthur Dow, another bartender, saw a man kick the defendant in the hallway. The man was yelling and screaming at the defendant. Once the crowd was out the door, Arthur Dow heard shots. He looked out and saw a group fighting in the parking lot.

Medical testimony established that Romulo was shot at a distance of six to eighteen inches. Romulo received three wounds. The fatal wound was a shot in the back.

*Rule 45*

Rule 45 states:

(a) Motion. When the defendant has been found guilty, the court on motion of the defendant, or on its own motion, may grant a new trial if required in the interest of justice.

Does this rule give the trial court power to grant a new trial when it determines that the overwhelming evidence is against the jury's verdict?

3 Wright, Federal Practice and Procedure: Criminal 2d § 553 (1982) states:

A motion for a new trial on the ground that the verdict is against the weight of the evidence must be distinguished from a motion for judgment of acquittal under Rule 29. The two motions may be combined, but they are governed by very different standards.

On a motion for judgment of acquittal, the court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. If on' this basis there is substantial evidence justifying an inference of guilt, the motion for acquittal must be denied.

On a motion for new trial, however, the power of the court is much broader. It may weigh the evidence and consider the credibility of witnesses. If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted.

*See also, United States v. Lincoln,* 630 F.2d 1313 (8th Cir.1980); *United States v. Simms,* 508 F.Supp. 1188 (W.D.La.1980); *United States v. Indelicato,* 611 F.2d 376 (1st Cir.1979).

Early New Mexico case law is consistent. *Archibeque v. Miera,* 1 N.M. 160 (1857), states:

Applications for new trials for verdicts against the evidence are addressed to the discretion of the court, which is to be so exercised as to subserve the substantial ends of justice.

*See also, Ruhe v. Abren,* 1 N.M. 247 (1857). The rule has been applied in criminal cases, as well. *Territory of New Mexico v. Webb,* 2 N.M. 147 (1881), states: "Where the evidence is contradictory and the verdict is

against the weight of evidence, ... a new trial may be granted by the court trying the cause in their discretion...." *See also, United States v. Lewis*, 2 N.M. 459 (1883).

Rule 45 allows the trial court, on its own motion, to grant a new trial "if required in the interest of justice." Consistent with early New Mexico case law we hold that this language allows a trial court to weigh evidence and the credibility of witnesses in determining whether a new trial is required.

The State argues that *State v. Garcia*, 84 N.M. 519, 505 P.2d 862 (Ct.App.), *cert. denied*, 84 N.M. 512, 505 P.2d 855 (1972), precludes the trial court from granting a new trial when it does not agree with the verdict. *Garcia* states:

A verdict of the jury will not be set aside because the trial court or this court is not satisfied beyond all reasonable doubt of the guilt of the defendant. *State v. Frazier*, 17 N.M. 535, 131 P. 502 (1913); *State v. Hunter*, 37 N.M. 382, 24 P.2d 251 (1933); *State v. Lucero*, 63 N.M. 80, 313 P.2d 1052 (Ct.App.1957).

*Garcia* only means that in close cases, the trial court is not required to set aside a verdict because it may have decided the case differently. This does not mean that as a matter of law the trial court can never grant a new trial when it believes that justice has not been done. A review of the cases cited in *Garcia* indicates that in each of those cases the jury's verdict was justified by the evidence. The cases do not hold that when the trial court believes a miscarriage of justice has occurred it has no power to grant a new trial.

The grant or denial of a new trial is addressed to the discretion of the trial court and will be reversed only for a clear abuse of that discretion. *State v. Perez*, 95 N.M. 262, 620 P.2d 1287 (1980). This applies where, as here, the trial court has granted a new trial in the "interest of justice." *Wright*, § 553; *United States v. Lincoln*.

Did the trial court abuse its discretion in granting a new trial? The court was dis-turbed by the difference between the testimony of the "interested" and "disinterested" witnesses. The State's case was based entirely on the testimony of three friends of the two dead men, and it is clear that the trial court did not believe the State's witnesses.

Angel Morales testified that he had never seen the defendant before. He said that they were leaving the bar and the defendant started shooting at them. This evidence, if believed, would establish first degree murder. *See State v. Lucero*, 88 N.M. 441, 541 P.2d 430 (1975). Angel's credibility, however, is extremely suspect. Although he had been shot, Angel said that he did not realize it until he got home and realized the gun was real. He said that he thought Benny, who was fatally shot, was faking. This testimony borders on the ridiculous.

Hector Rodriquez also testified that they left the bar and the defendant opened fire. Hector said he saw the defendant in the bar. He was impeached by his grand jury testimony in which he stated that he never saw the defendant in the bar. Moreover, in view of the bartender's testimony, which suggested that Hector started the altercation that ended in the death of his two friends, Hector had ample reason to downplay his participation in the incident, while blaming the defendant.

The defendant's theory was self-defense and his testimony, although far from consistent, could support his defense. The trial court was impressed by the testimony of the two disinterested witnesses, the bartenders. Both bartenders saw the defendant in the bar and both saw an altercation between the defendant and some men. The trial court found this testimony significant. It supports, at most, second degree murder or voluntary manslaughter. It does not support first degree murder.

It is implicit in the trial court's ruling that it believed the bartenders and did not believe the victims' friends. On appeal, we are hampered by a cold record. The trial court is in a much better position to ob-

serve the demeanor of witnesses and judge their credibility and its decision, while not conclusive, is entitled to great weight. Here the first degree murder convictions were based on the testimony of Angel, Hector and Jose Hernandez. When the testimony of the two disinterested witnesses, the bartenders, is considered, we can see why the trial court ruled as it did. The trial court clearly felt an injustice had been done, and sought to correct it. On this record we see no abuse of discretion and defer to the judgment of the trial court.

The trial court granted a new trial on the aggravated battery conviction because the battery "occurred at the same time and place as the [first degree murder counts] and therefore, in the interest of justice, this count should be retried...." Because the trial court felt that the State's witnesses could not be believed and the aggravated battery conviction was based on their testimony, the trial court did not abuse its discretion in granting a new trial on the aggravated battery conviction.

The trial court also stated that certain instructions were faulty and that the jury might have been confused. The confusion is apparent from the answer to an interrogatory which the jury had been instructed to answer only if it found second degree murder or voluntary manslaughter. On retrial, the trial court will have the opportunity to correct faulty or confusing instructions.

We hold that under Rule 45, which allows a trial court to grant a new trial "if required in the interest of justice," a trial court may grant a new trial when it has a strong conviction that the jury has erred. In determining whether to grant a new trial the court may weigh the evidence and the credibility of witnesses. We review the court's ruling for an abuse of discretion. We reiterate that our holding does not apply to a motion for a directed verdict of acquittal based on insufficiency of the evidence. The trial court may not weigh evidence or the credibility of witnesses in that situation.

The trial court did not abuse its discretion in granting a new trial on the two first degree murder convictions and on the aggravated battery conviction. The case is remanded for a new trial.

IT IS SO ORDERED.

WALTERS, C.J., and HENDLEY, J., concur.