145 P.2d 872

**STATE v. EVANS.**

No. 4786.

Supreme Court of New Mexico.

Feb. 1, 1944.

C. M. Neal and W. D. Girand, Jr., both of Hobbs, for appellant.

Edward P. Chase, Atty. Gen., and Harry L. Bigbee, Asst. Atty. Gen., for appellee.

THREET, Justice.

Appellant was tried upon an information ·charging him with murder in the first degree and was 'convicted of the crime of voluntary manslaughter. He appeals to this court, as- ·signing error as follows:

1. "The court erred in refusing to grant defendant's instruction No. 1, as follows:

" 'Gentlemen of the Jury, you are instructed that the defendant had a right to be armed as there is no law in the State of New Mexico that prohibits the carrying of a concealed weapon, and you will indulge in no presumption against him by reason of ·the fact that he was armed.' "

2. "The court erred in refusing to grant defendant's motion to set aside the verdict and for a new trial."

No question is raised here as to the suf- ·ficiency of the evidence to sustain the verdict of the jury; and no objections were made to the instructions given by the trial ·court.

Appellant's defense to the crime ·charged was that the shooting of the deceased was an accident. There is no merit .in his first assignment of error. He was not on trial for the crime of carrying a concealed weapon. The instruction tendered by him would have presented an abstract charge, under the issues raised by the information and the defense interposed thereto, and would have called for the consideration by the jury of an immaterial issue, aside from the inquiry as to his guilt under the information charging him with murder and his conviction of voluntary manslaughter pursuant to the evidence.

In State v. Martinez et al., 34 N.M. 112, 278 P. 210, 211, Jose Tomas Martinez and his son were charged with the murder of Desiderio Grine. In the trial of the case the defendants sought to prove that the place where the crime occurred was the landed estate of the defendant Jose Tomas Martinez, as a justification for his being armed at the time of the fatal encounter. The trial court refused to receive evidence touching upon this proposition and error was assigned in this court. In passing upon the question we said: "The next point relied upon is that the court refused to permit defendants to prove that the place where the killing occurred was 'the landed estate' of defendant Jose Tomas Martinez, and that intoxicating liquors were not sold thereon, citing sections 1701, 1702, and 1703 of the Codification of 1915. These sections have to do with carrying deadly weapons, which is permitted on 'the landed estate' of the owner, provided liquor is not sold on the premises. Clearly these sections are not in any manner material to the present cause. Defendants were not on trial charged with carrying con-

cealed weapons either on or off their landed estate. They were tried for murder. The trial court was right in refusing to let this cause be turned into a contest to try title to the real estate which was the scene of the killing. Such an inquiry was both immaterial and improper."

In Hamilton v. State, 217 Ala. 350, 116 So. 340, the defendant Mattie Hamilton was convicted of murder in the first degree. She appealed to the Supreme Court and assigned error to the trial court's refusal to give the following instructions:

" '(6) I charge you that the defendant had a right to carry a weapon about her person on her premises and in the public road, provided you are reasonably satisfied from the evidence that she did not have said weapon concealed from ordinary view.

" '(7) The defendant had a right to have a weapon on her person about her premises or in the public road, provided you are reasonably satisfied from the evidence that said weapon was not concealed from ordinary view.' "

The Supreme Court of the State of Alabama in sustaining the trial court's refusal to give the requested instructions said: "This action of the trial court is urged as error, for the reason that the defendant had the right to bear arms, under section 26 of the Constitution of 1901 and the action of the Legislature (Special Session 1909, p. 258; sections 3485–3487, Code of 1923 [Code 1940, Tit. 14, §§ 161–164]; Isaiah v. State, 176 Ala. 27, 58 So. 53) to regulate the carrying of firearms and concealed weapons. These charges were abstract under the issues of fact presented, and sought to present an immaterial issue for the jury, aside from the inquiry of guilt vel non, under the indictment for murder of which she was convicted, and pursuant to the evidence."

In State v. Cyty, 50 Nev. 256, 256 P. 793, 795, 52 A.L.R. 1015, the defendant was charged with an assault with intent to kill and convicted of the offense of assault with a deadly weapon with intent to inflict bodily injury. He appealed from both the judgment and the order denying his motion for a new trial. Over the objections of the defendant the trial court gave the following instruction. "It shall be unlawful for any person in this state, except peace officers, or persons while employed upon or traveling upon trains, stages, or other public conveyances, to wear, carry or have concealed upon his person, in any town, city or village, any dirk-knife, pistol, sword in case, slung-shot, sand-club, metal knuckles, or other dangerous weapon, without first obtaining permission from the board of county commissioners, attested by its clerk, of the county in which such concealed weapon shall be carried."

The Supreme Court in reversing this case and ordering a new trial said: "The defendant was not on trial upon a charge of carrying a concealed weapon, and the instruction should not have been given."

In People v. Black et al., 45 Cal.App.2d 87, 113 P.2d 746, 756, the defendants were tried upon a charge of conspiracy. Error was assigned to the court's refusal to give defendants requested instructions to the effect that they were not charged with a conspiracy to establish uniform prices in the cleaning industry or to control the taking of "stops" from one cleaner by another. The court said: "The requested instruction concerning the right of labor to strike was properly refused, for it was not pertinent to any issue in the case. Defendants were not charged with unlawful striking nor with the conspiracy to do so."

In People v. Shannon, 28 Cal.App.2d 677, 83 P.2d 302, 304, the defendants Matthew Shannon and Kennan Holmes were convicted of conspiracy and of assault with a deadly weapon. Matthew Shannon appealed, assigning error to the trial court for the refusal to give a requested instruction relative to the right of union labor to strike and declare a boycott. The court said: "Appellant requested certain instructions relative to the right of union labor to strike and declare a boycott, which were refused by the court. It is claimed that the failure to give these instructions constituted error. Section 1093, subdivision 6, of the Penal Code provides in essence that it is the duty of the court to instruct the jury on any points of law pertinent to the issue. In the instant case, appellant was not on trial for striking or for attempting to declare a boycott and no issue in this respect was presented. The requested instructions, not being pertinent to the issues in the case, were therefore properly refused."

In the case at bar, appellant was on trial for murder. He was convicted of voluntary manslaughter. His defense to the crime charged was that the shooting was an accident. The contention that he had a right to be armed was not an issue in the case. The requested instruction sought to present an immaterial matter for the consideration of the jury. It had no application to any question presented by the pleadings and evidence in the case. It was not error for the trial court to refuse to give the requested instruction. State v. Jackson, 30 N.M. 309, 233 P. 49.

Appellant's second assignment of error is that the verdict should have been set aside and he should have been granted a new trial. In his motion to set aside the verdict and for a new trial, it is alleged, in substance, as follows:

That the cause was submitted to the jury upon the facts, instructions and argument of counsel about 6 o'clock in the evening of February 19, 1943, and that, in violation of the standing orders of the court, the bailiff refused to permit the jury to eat their evening meal at the usual hour, but advised the jury to get their work lined out and he would take them to their evening meal. That the court returned to the court house about 7:30 o'clock in the evening, but did not discover that the jury had not gone to their evening meal until fifteen or twenty minutes thereafter. That the jury was un-

able to agree upon a verdict and continued to deliberate until about 9:30 o'clock on the 20th day of February, 1943. That one of the jurors in the presence of the remainder of the jury, asked the bailiff how long the court would hold the jury in session before it would declare a hung jury. Whereupon the bailiff advised the jury that "probably a week". That, within a few minutes thereafter, the court became advised of the conversation of the bailiff with the jury, and in the presence of the defendant and his counsel, requested the bailiff to return the jury to the jury box. The court told the jury that it understood the bailiff had made the remark above set forth; that the jury were reasonable men and that the court would receive a verdict if they could, in good conscience agree on one, and if they could not agree on a verdict they would not be held for an unreasonable length of time. The court also advised the jury that the duties of the bailiff were to wait on the jury and that they should disregard the statements made by the bailiff to them. That the acts and conduct of the bailiff constituted undue influence and duress on the minds of the jury, and could not and were not eliminated or extinguished by the admonition of the court.

No evidence was offered in support of the motion. The court in ruling upon the motion found the facts of this incident were substantially true as set out in the motion, but in overruling the motion, necessarily disagreed with the conclusion drawn therein by appellant that such facts constituted undue influence and duress not removed by the court's admonition touching the matter.

There is nothing indicating that the jury was in any way influenced by what had occurred. The court, as soon as the actions of the bailiff were called to its attention, told the jury that it should disregard the statements of the bailiff and that the duties of the bailiff were to wait on the jury. Appellant concedes that a strong burden is imposed upon him to show that he was prejudiced by the actions and statements of the bailiff. In his brief in chief he states: "We realize that the proposition of establishing misconduct upon the part of the officers in the conduct of their relationships with the jury after submission is one on which strong burden is imposed upon the defendant to show prejudice."

If appellant's concession be taken as the law in this state, then it is apparent from the record that he has failed to meet that burden.

Under the decisions of this state there appears to be two classes of cases dealing with the question of the necessity of showing prejudice to constitute grounds for a new trial.

That class of cases holding that a showing of prejudice is not necessary, is discussed in State v. Hunt, 26 N.M. 160, 189 P. 1111, and the other which holds that a showing of prejudice is necessary is State v. Blancett, 24 N.M. 433, 174 P. 207. Both of these cases are discussed at length in

State v. Clements, 31 N.M. 620, 249 P. 1003, 1008.

In State v. Clements, supra, in construing State v. Hunt, supra, we said: "That decision involved a communication between the judge and a juror relating to a proceeding in the case. It was held that, in such a case, prejudice need not be shown. The decision was based upon the right of the accused to be present during all proceedings. It is urged that the strict rule adhered to in the Hunt Case, supported, as was there indicated, by practically unanimous authority, is inconsistent with the comparative liberality of the authorities above referred to when dealing with communications with outsiders. However that may be, it is evident that the two classes of cases involve different principles and that the results have been reached from different considerations. The great influence of a communication from the judge regarding the case is manifest. No such influence attaches presumptively to a communication from an outsider, particularly when it has no reference to the case."

In State v. Blancett, supra [24 N.M. 433, 174 P. 211], we said: "There is no attempt to show, in the case at bar, either that the jury actually was in fact tampered with, or that the defendant was in any way prejudiced. We believe that the great weight of authority is in favor of the necessity of showing prejudice and that sound reason supports the rule requiring a show-ing of prejudice. See, also, Territory v. Chenowith, 3 N.M.(Johns.) 225, 5 P. 532; Roper v. Territory, 7 N.M. 255, 33 P. 1014; Territory v. Nichols, 3 N.M. (Gild.) 103, 2 P. 78. The three New Mexico cases referred to follow the majority rule, and we see no reason to depart therefrom. See, also, State v. Starr, [24 N.M. 180], 173 P. 674."

In the case at bar it does not appear, nor is it claimed, except in the argument of counsel for appellant that the actions and statements of the bailiff had anything to do with the result of the jurors' deliberation. As soon as the matter complained of was called to the attention of the trial court the jury was told that it should disregard any statements made in its presence by the bailiff. Between thirty minutes and an hour, after the court so advised the jury, it returned a verdict finding the defendant guilty of voluntary manslaughter.

Appellant in his arguments states: "It must be remembered that at the time of this occurrence the defendant was on trial for murder in the first degree. He was a negro surrounded by all of the natural disadvantages inherent to one of his race on trial in the southeastern portion of New Mexico. It is true that the trial judge who presided in this case, realizing the inherent difficulties in all cases involving negro defendants, has thrown around them every precaution consistent with the mandates of the law. The treatment of

the jury in this case outside the presence of the court was of such character that we believe a new trial should be granted."

In Territory v. Edie, 6 N.M. 555, 30 P. 851, 854, cited with approval in State v. Clements, supra, there was a communication between the foreman of the jury and the deputy sheriff. The latter at the foreman's request, while separated from the other jurors, wrote the verdict. Viewing it technically there could be no more dangerous communication. It not only related to the case in which the jury was deliberating, but the jury's conclusion on the case was written by and put in the language of an outsider. The court in disposing of this question said: "It does not apear, nor is it claimed, except in argument, that the form so written had anything to do with the result of the jury's deliberations. Whilst it is an irregularity, censurable in the highest degree, the extreme rigor with which it was visited under the ancient rule has been considerably relaxed in modern practice. It is now almost universally established that, unless it appears that such interference takes place for some corrupt or sinister purpose, or that such conduct has been prompted by the parties and has resulted injuriously to one of such parties, the verdict will not be disturbed, either in civil or criminal cases. * * * It not appearing that the defendant's rights were either impaired or imperiled by such irregularity, we cannot hold it error solely on eloquent counsel's vivid portrayal of the grave injustice that may sometimes result from such misconduct."

In State v. Clements, supra, the motion for a new trial was based upon affidavits that the prosecuting witness, who did not testify in the case, entered the room in the hotel where the jury was and remained four or five minutes and upon another affidavit that during the recess of the trial, this same person conversed apart with one of the jurors for about twenty minutes. This court in disposing of this question upon a rehearing said: "We cannot admit, therefore, that it is the law of this state that the bare fact of an unauthorized and improper communication necessitates in all cases a new trial, even in capital felonies. When it appears that there has been such communication, the important question is whether prejudice has resulted. Such a communication certainly requires explanation, not only to secure the accused in his rights, but to maintain the court's authority. But if it satisfactorily appears that the communication was harmless and had no effect on the verdict, the rights of the accused do not require, and public interest does not permit, the granting of a new trial. * * * An application for a new trial, particularly in a criminal cause of this gravity, is a matter of serious moment. Its decision involves grave responsibility. Every safeguard should surround the right of an accused person to a fair trial and to a verdict based on the evidence

alone. On the other hand, new trials for purely technical reasons are against public interest. It is the duty of the court to award them for the correction of misconduct prejudicial to the accused. It is also the duty of the court to protect the administration of public justice against abuse. To adopt the rule contended for here would render it easy for one in a desperate situation involving his life to procure some act to be done which, as matter of law, would invalidate an unfavorable verdict."

Appellant, in the case at bar, has failed to sustain the burden of showing prejudice arising from the statements of the bailiff to the jury and his failure to· permit the jury to eat their evening meal at the usual time.

The question here presented is one that addresses itself to the sound discretion of the trial court, and, in the absence of a showing of prejudice, there is no reversible error. State v. Romero, 34 N. M. 494, 285 P. 497; State v. Clements, supra; and State v. Blancett, supra.

Having found no error, and being satisfied that the appellant had a fair trial, the judgment must be affirmed, and it is so ordered.

SADLER, C. J., and MABRY, BICK-LEY, and BRICE, JJ., concur.