Donald Wayne **SUMRALL**, Joe Jerrell Crocker and Raymond Claude Nabors, Appellants,

v.

**UNITED STATES** of America, Appellee.

Nos. 8374–8376.

United States Court of Appeals Tenth Circuit.

May 9, 1966.

**312**

Mike Barclay and Norman Kinne, Dallas, Tex., for appellants.

Bruce Green, U. S. Atty., for appellee.

Before MURRAH, Chief Judge, SETH, Circuit Judge, and CHRISTENSEN, District Judge.

MURRAH, Chief Judge.

Appellants jointly appeal from judgments and sentences after a jury trial on an indictment jointly charging them with armed robbery of a federally insured bank in violation of 18 U.S.C. § 2113(d).

The evidence of guilt is overwhelming. One of the confessed participants and co-defendants testified to the plans and execution of the robbery and implicated each of the appellants as an active participant. There was other direct and circumstantial proof of guilt. The only point on appeal is whether the trial court erroneously refused to strike as "unresponsive, prejudicial and inflammatory" a reference by one of the police officer-witnesses to the "records" of appellants.

The question is presented in this context: On direct examination one of the arresting officers testified that he and his partner stopped the three defendants and a woman in a car at approximately 3:30 in the morning in a residential section of Dallas, Texas; that the car was stopped because it was exceeding the speed limit and the lights on the rear were defective. When the car was stopped, the driver alighted and in response to questions identified himself as Bob Nabors; he admitted having no driver's license or any other identification. On search of Nabors' person the officers found "a large sum of bills" and a driver's license and identification card "belonging to another man named Briggs". After some further searching and questioning, the defendants were taken to the Dallas Police Headquarters and to the Auto Theft Bureau where they were further searched and placed in custody. The police officer was cross-examined concerning the cause of apprehension and particularly with respect to the speed of the automobile and the defective lights over the license plate. The cross-examination developed the fact that neither appellant Crocker nor appellant Sumrall had committed any breach of the peace in the presence of the officers. On direct examination the witness was asked, "What was your purpose in removing this examination from the scene of the arrest to the police station?" The question was objected to as "pure conjecture". The objection was overruled and the witness answered, "The purpose was after questioning them that we advised them that we were going to check their records, and being that they admitted that they had one." The response was objected to "on the grounds that it is prejudicial and inflammatory. It's unresponsive to the question propounded by the U. S. Attorney." The court ruled, "No. He's telling him why they took them to the police station. Overruled." Counsel for the defendants then moved to strike the answer "as being unresponsive, prejudicial and inflammatory." The motion was overruled and nothing further was said concerning the matter during the trial of the case. None of the defendants testified and neither their reputations nor their veracity was put in issue.

On appeal the government freely concedes that the reference to the defendants' "records" was inadmissible and erroneous. See Michelson v. United States, 335 U.S. 469, 472, 69 S.Ct. 213, 218, 93

L.Ed. 168.[1] The error is simply excused as harmless under Rule 52 F.R.Crim.P. It is suggested that the response was spontaneous, unforeseeable, and that instructions to the jury not to consider it would have overemphasized that which was purely incidental in the context of overwhelming evidence of guilt. It may be that the answer was unresponsive and unforeseeable. There is nothing to indicate that it was designed or planted. It may also well be that any comment or reference to the "records" would have served to overemphasize the fact in the minds of lay jurors. But, the defense, not the prosecution or the court, must be the judge of the probable impact of the reference to appellants' records. The motion was concededly well taken, and the court undoubtedly should have stricken the answer and instructed the jury not to consider it. The effect of the refusal to strike the response and admonish the jury was to inferentially tell the jury that they may consider the records in determining guilt or innocence.

It has been recently said in the Second Circuit that "Improper introduction of evidence of a defendant's past criminal record is ground for a new trial." And, "Cautionary instructions will not cure the error." See United States v. Rinaldi, 301 F.2d 576, 578, citing Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250. The Marshall case was concerned with the effect of newspaper articles read by some of the jurors outside the court which stated that the defendant had a "record of two previous felony convictions" and other matter reflecting on his character. Prejudice was conclusively presumed even in the face of the jurors' denial that they were in any way influenced by the news articles. But, the courts have not categorically applied the rule to every erroneous exposure of jurors to the defendant's record or reputation. Michelson v. United States, supra, reaffirmed the common law tradition excluding "any kind of evidence of a defendant's evil character to establish a probability of his guilt", but it did not rule that the erroneous admission of every kind of such evidence under every circumstance required the court to grant a new trial. Instead, it wisely left the whole matter of character and record evidence to the prudent discretion of the trial court, subject, of course, to review for abuse.

Before Michelson and Marshall, the Supreme Court, dealing with the erroneous admission of probative evidence of guilt and particularly whether such error so infected the case as to require reversal, said, "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand." See Mr. Justice Rutledge in Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557.

We have recently had occasion to note the harmless error rule of 52(a) F.R. Crim.P. in considering whether the error "affected in a substantial degree the

---

1. Mr. Justice Jackson stated the rule as follows: "Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, Greer v. United States, 245 U.S. 559, [38 S.Ct. 209, 62 L.Ed. 469], but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." Michelson v. United States, supra.

rights of the accused or contributed to a miscarriage of justice." See Wright v. United States, 10 Cir., 301 F.2d 412, 414. In that case we reversed for a new trial even in the absence of an objection to an erroneous instruction.

■ From all this it seems safe to say that not all inadmissible references to records of prior convictions or bad character are incurable by appropriate rulings of the court. But, the harmless error rule is more easily stated than applied, for it involves the human equation of attempting to read the jurors' minds to determine whether the erroneous matter, be it inadmissible evidence or an erroneous statement of the law, unduly influenced their consideration of guilt or innocence.

Reference to the case law is helpful only to determine what concrete facts have prompted the courts to excuse error as "harmless" or to reverse for prejudice. The closest case in point of fact is Evenson v. United States, 8 Cir., 316 F.2d 94, where the arresting officer-witness stated incidentally in connection with relevant testimony that the defendant "admitted his past record". Apparently when counsel rose to object the court, sensing the situation, stated that the motion would be sustained and the "jury will disregard it". After a hearing outside the presence of the jury, the court overruled a motion for mistrial and then proceeded to tell the jury, that part of the witness' statement " * * * with respect to what [the defendant] told this trooper will be stricken and the jury will disregard it." The court thought the strength of the government's case important in appraising the probable effect of the asserted error.

Other courts have excused the incidental and isolated erroneous references to defendants' prior trouble with the law on the grounds that the prompt instruction to the jury to disregard the answer cured the error, i. e. see United States v. Stromberg, 268 F.2d 256, comparing United States v. Tomaiolo, 249 F.2d 683, where reversal was based on accumulation of errors. These Second Circuit cases seem to be contrary to the categorical statement in United States v. Rinaldi, supra.

In Tallo v. United States, 344 F.2d 467, the most recent case brought to our attention, the First Circuit, quoting from Fahy v. State of Connecticut, 375 U.S. 85, 86, 84 S.Ct. 229, 11 L.Ed.2d 171, considered whether "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." After reviewing the case law on the subject, the court finally concluded that the reference to the defendant's being in jail was reversible error because "the objectionable portion of the answer was not stricken and * * * no curative instruction was given immediately after the incident nor at any later stage in the trial."

■ We are, of course, loathe to reverse a case like this in the face of overwhelming evidence of guilt. Technical niceties such as these make the law appear ridiculous to the man on the street. But, "All law is technical if viewed only from concern for punishing crime without heeding the mode by which it is accomplished." I. e. see Mr. Justice Frankfurter in Bollenbach v. United States, 326 U.S. 607, 614, 66 S.Ct. 402, 90 L.Ed. 350. In circumstances like these the question is not whether the appellants have been proven guilty, but whether guilt has been established according to the procedural safeguards to insure trial before a fair and unprejudiced jury. It is not enough to be able to say that the evidence is entirely sufficient to convict without reference to prior records of appellants and that the jury would have in all probability returned a verdict of guilty without such knowledge. The question we must decide is whether the jury was more prone to convict these appellants knowing they had previous records than without such knowledge. In other words, can we say with reasonable certainty that the reference to prior records "had but very slight effect on the verdict of the jury"? We cannot so say, and the cases must, therefore, be reversed.

The judgments are reversed and remanded for a new trial.