Carl Tillman ROGERS, Jr., Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 219–68.

United States Court of Appeals
Tenth Circuit.

May 20, 1969.

Harold H. Parker, Albuquerque, N. M., for appellant.

John A. Babington, Albuquerque, N. M. (John Quinn, U. S. Atty., with him on brief) for appellee.

Before MURRAH, Chief Judge, and LEWIS and HOLLOWAY, Circuit Judges.

MURRAH, Chief Judge

Our defendant, Carl T. Rogers, Jr., was tried and convicted for the interstate transportation of a stolen automobile in violation of the Dyer Act, 18 U.S.C. § 2312. He assigns four points of error, all of which we believe to be without merit. We will treat them seriatum on their relevant facts.

At trial Rogers' defense was mental irresponsibility for the admitted acts and this issue was submitted to the jury on instructions taken from the rule in Wion v. United States, 325 F.2d 420 (10th Cir. 1963) to which no objections were made. During the trial, however, the trial judge and the prosecution from time to time used the terms "insane" and "insanity" in reference to the defense of mental responsibility. The first asserted error is that the very use of these terms in the presence of the jury is incurably prejudicial.

The reasoning is that in the minds of the jurors "insane" and "insanity" mean crazy, loco, or bizarre and when they are used in the jury's presence, and in the context of mental responsibility, the jury is likely to apply their colloquial meaning rather than the court's instructions on the proper test of mental responsibility. It may well be that the terms "insane" and "insanity" are now obsolete in both medical science and legal jurisprudence. Even so, we are quite unwilling to say that their very use in the presence of a jury is prejudicial per se, i. e. that the jury must be presumed to apply their colloquialisms in determining guilt or innocence based on mental responsibility even in the face of proper instructions. To say that a jury cannot put aside the common usage of a word and be effectively instructed on the proper legal meaning is contradictory to our basic system of justice. We do not believe a jury is so untrustworthy.

The next point of error is difficult to understand and even more difficult to articulate. But as we read the brief, it is to the effect that the prosecution indulged in improper and prejudicial trial tactics by asking Rogers a question calculated to require an evasive answer at the risk of making reference to a prior mistrial and that the necessarily evasive answer tended to improperly impugn his testimony.

The factual situation was that Mr. Swad, the owner of the automobile agency in Ohio from which the car was stolen, testified without objection that he did not know the defendant Rogers, meaning that he did not know him in Ohio when the car was stolen, even though he subsequently had come to know him at the prior mistrial. Rogers later testified that he had heard Mr. Swad say certain things about the stolen car's condition, basing this testimony on statements made by Swad at the first trial. This seemed to contradict Swad's earlier testimony at the second trial that he did not know Rogers when the car was stolen. On the disputed cross-examination, the prosecution sought to require Rogers to say when and where he had heard Swad make these statements.

The short and conclusive answer is that the court so directed the questioning with respect to when and where Swad's statements were made that Rogers was not required and did not, in fact, give an evasive answer. No prejudice whatsoever resulted from the cross-examination.

The third asserted error is the trial court's refusal to give the "stronger evidence" or "missing witness" instruction to the effect that if the prosecution is able to produce stronger evidence on a material point, the weaker evidence actually presented should be distrusted. See generally Shurman v. United States, 233 F.2d 272 (5th Cir. 1956); 3 Am. Jur., Trial, § 695, p. 531. The facts are that a cellmate of Rogers at the Albuquerque jail testified that Rogers told him that he was part of a car theft ring operated by a Carl Andreas in California. Rogers admits telling the cellmate this story, but claims it was a "cock and bull" story told to pass the time away in jail.

An FBI agent testified that the address of Carl Andreas given by Rogers was fictitious, but that there was a Carl Andreas in the Los Angeles area with a felony record. The FBI, however, was unable to locate him.

Rogers contends that the FBI's failure to produce Andreas or anyone remotely connected with a car ring required the court to instruct that the weaker evidence, the cellmate's testimony, should be distrusted. Without deciding whether Andreas was a "missing witness" and that his testimony would have been "stronger evidence" vis-a-vis the cellmate within the rule, it is sufficient to say that the prosecution must have been able to produce the "stronger evidence" or "missing witness". See 2 Wigmore, On Evidence § 286 at 166 (1940). The record clearly shows that Andreas could not have been produced.

■ The final asserted error is the prosecution's referrals to Rogers' previous jail stays without showing convictions. References to jail stays are improper, Banning v. United States, 130 F.2d 330 (6th Cir. 1942); Brown v. United States, 380 F.2d 477 (10th Cir. 1967), and the trial court so ruled. The facts were that on direct examination Rogers described the conditions of the jail in which he was detained and said the bad conditions were partly responsible for his confession. On cross-examination Rogers freely admitted without objection that he had previously been in three other jails. When on direct examination his mother testified that she was shocked to learn that Rogers was in jail, she was asked on cross-examination if she knew he had been in jail before and where. Objection was made and sustained. Later, when Rogers again took the witness stand to describe and complain about the jail conditions where he was detained, he was again asked on cross-examination to compare the other jails he had been in. Objection was sustained. The prosecutor continued to ask about what comparisons he had made and finally asked: "You didn't make comparison between the two other jails that you know about, is that correct?" At this point the court stopped the prosecutor even before objection was made.

The government contended at trial and here that Rogers opened the question of his jail stays and that cross-examination was proper, but the trial court, apparently out of an abundance of caution, refused to permit the prosecution to pursue the matter. The question is whether in these circumstances the references to the other jail stays were so prejudicial as to be incurable by the court's rulings. See Sumrall v. United States, 360 F.2d 311 (10th Cir. 1966); Lawrence v. United States, 357 F.2d 434 (10th Cir. 1966); Brown v. United States, supra; Maestas v. United States, 341 F.2d 493 (10th Cir. 1965).

■■ We have said in circumstances like these that the trial judge is the best judge of whether improper references can be cured by his rulings and we will not disturb his judgment in the absence of abuse of discretion. See Brown v. United States, supra. Our case is unlike Sumrall, supra, where the trial court refused on request to admonish the jury to disregard the references to past "records". Instead, it is more like Brown, where we thought the ruling of the court entirely sufficient to obviate any telling effect on the jury. In our case we are well satisfied that the inadmissible references to the jail stays "did not influence the jury, or had but very slight effect." See Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

Affirmed.