673 P.2d 144

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Douglas HENDERSON,
Defendant-Appellant.**

**No. 7270.**

Court of Appeals of New Mexico.

Nov. 23, 1983.

Paul Bardacke, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Thomas J. Horne, P.C., Albuquerque, for defendant-appellant.

## OPINION

NEAL, Judge.

The defendant, Douglas Henderson, was convicted of criminal sexual contact of a minor. NMSA 1978, § 30–9–13(A). He raises fifteen issues, but because we reverse on the prosecutorial misconduct issue, we do not address all of the issues raised.

Following an incident at the Howard Johnson restaurant in Las Cruces Henderson was charged with criminal sexual penetration. The victim, six-year-old David, testified that he went to the bathroom by himself. There was a man who spoke Spanish to him and then asked him into a stall, locked the door, and performed fellatio on him. When David started crying the man tapped him on the head. David unlocked the door and ran out to his parents. David identified the defendant at the restaurant as he was getting into his car, and in court.

Sylvia, David's mother, testified that David came running and screaming out of the men's room. His pants were up, but unzipped. He first told her that a man had grabbed him, and then he started throwing up. He then said that the man had put his mouth on him, on his pee-pee (his word for penis).

Lawrence Pulido was using the urinal in the restroom when he heard a "commotion" in the stall. He saw a little boy run out, and heard the defendant call to him. He thought the man was the boy's father. When he left the restroom, and saw the boy with his parents, he knew something was wrong.

The defendant vehemently denied the charge. He testified that he had a beer and then walked into the restroom. He saw David standing at the urinal, fiddling with his Levis. He said "hi" to the boy, and asked him his name in Spanish. The boy did not answer and defendant went into a stall because David was in front of the

urinal. He had not locked the stall, and David came in and asked for help with his zipper. Defendant finished urinating, and then unzipped David's pants and found there was cloth stuck in the zipper. He did not touch David's body, or his sexual organ. He did not lock him in the stall, or hit him. David just stood there looking at him and then ran out of the door. He was not crying or screaming; there was no commotion.

### 1. Prosecutor's comments.

We review this issue even though the State has confessed error. *State v. Maes,* 100 N.M. 78, 665 P.2d 1169 (Ct.App.1983).

During rebuttal argument the prosecutor said:

MS. WARDLAW: I want to leave you with a very short story—something to think about. This is a true story.

Several years ago, when I lived in Hobbs, my next door neighbor, a 60 year old woman, was raped when a man broke into her apartment. One day at the courthouse I was talking to one of the secretaries in the district attorney's office, an older woman who worked there for years. And I was asking if they had suspects, and this sort of thing.

MR. ESPARZA: Your Honor, I'm going to object to this. I don't think it's relevant to closing argument * * * *

THE COURT: The way you're headed—any other cases have no bearing on this case.

MS. WARDLAW: Your Honor, I have a point to make.

THE COURT: All right, subject to being admonished and stricken.

MS. WARDLAW: Well, as I was saying, ladies and gentlemen, she related a story to me that had nothing to do with my neighbor, but just as an example she gave me, that in this community a man was tried for rape. There had been a series of rapes in the community and they all fit the same pattern. They arrested a suspect and tried him and he was found not guilty. And apparently, from what they learned from the jurors later, they were heavily influenced by the fact that the man was a nice appearing young man who sat there in a business suit, had a good job, his wife and children were in the courtroom. They just simply could not believe that this man could have committed a rape. But as a result of the trial and the publicity the family, somewhat naturally, moved out of the community. They moved to another community where a couple of months later the same series of rapes began. The man was ultimately caught and finally convicted. However, there had to be several more victims of this man before a jury believed he was guilty.

MR. ESPARZA: Your Honor I'm going to move to strike at this time.

THE COURT: Are you finished with your relating point?

MS. WARDLAW: The point I wanted to make, ladies and gentlemen, was that people who commit crimes, including sex crimes, crimes involving children, can look nice. They can sit there in a business suit and they can be very pleasant and normal in the courtroom. They sometimes have wives and girlfriends. They sometimes have children and stepchildren. But that doesn't mean they didn't commit the crime that they were accused of. Thank you.

THE COURT: Disregard any reference to any other case, results or whatever may have happened somewhere else. Your decision in this case is based on the evidence produced here in open court and the instructions given to you by the court as to the law.

A prosecutor is allowed reasonable latitude in closing argument. *State v. Ruffino,* 94 N.M. 500, 612 P.2d 1311 (1980). However, remarks must be based on the evidence, *State v. Herrera,* 84 N.M. 46, 499 P.2d 364 (Ct.App.), *cert. denied,* 84 N.M. 37, 499 P.2d 355 (1972), or be properly in response to the defendant's argument. *State*

*v. Montoya,* 95 N.M. 433, 622 P.2d 1053 (Ct.App.1981).

Convictions have been reversed when the prosecutor has improperly asked about prior convictions, *State v. Day,* 91 N.M. 570, 577 P.2d 878 (Ct.App.), *cert. denied,* 91 N.M. 491, 576 P.2d 297 (1978), commented on the defendant's failure to testify, *Gonzales v. State,* 94 N.M. 495, 612 P.2d 1306 (1980), and commented on the defendant's silence at the time of arrest, *State v. Lara,* 88 N.M. 233, 539 P.2d 623 (Ct.App.1975); or after arrest, *State v. Callaway,* 92 N.M. 80, 582 P.2d 1293 (1978). Also, a conviction was reversed when a prosecutor impeached a defendant by use of a misdemeanor conviction for possession of marijuana, *Albertson v. State,* 89 N.M. 499, 554 P.2d 661 (1976), and the prosecutor's mention of "mugshots" or "mugbooks" has been condemned, *State v. Gutierrez,* 93 N.M. 232, 599 P.2d 385 (Ct.App.1979).

In the present case the prosecutor's comments were unnecessary. The "true story" about another rape case was lengthy, not based on evidence, and served no purpose other than to arouse prejudice against the defendant. A prosecutor should not inject prejudicial remarks in any trial, but particularly in a rape trial, which by its nature arouses the passion of a jury.

This case was essentially a swearing match, the victim against the defendant. The victim's testimony was far from consistent. At times he said that the district attorney told him what to say, and on one occasion, he said none of it ever happened. That it was a close case is indicated by the verdict, which appears to be a compromise. The victim's testimony, if believed, supported criminal sexual penetration. The defendant's testimony, if believed, supported acquittal. Instead the jury found the defendant guilty of criminal sexual contact. Under the circumstances we cannot say the improper remarks did not contribute to the conviction for which defendant was sentenced to three years in the penitentiary. As stated in *State v. Ross,* 88 N.M. 1, 536 P.2d 265 (Ct.App.1975):

> [T]he case at bar was essentially a swearing contest between the defendant and the complaining witness, both of whose versions of the events of the night were equally plausible or implausible. The improper rebuttal evidence could easily have tipped the balance against the defendant. The defendant's substantial right to a fair trial was thereby violated.

We recognize that generally an admonishment to the jury will cure an error, but we cannot lightly brush off the defendant's conviction by saying that the error was harmless, or cured by the court's admonishment. As stated in *State v. Rowell,* 77 N.M. 124, 419 P.2d 966 (1966):

> " * * * When the error is exposed on appeal, it is met by the stereotyped argument that it is not apparent it in any wise influenced the minds of the jury. The reply the law makes to such suggestion is: that, after injecting it into the case to influence the jury, the prosecutor ought not to be heard to say, after he has secured a conviction, it was harmless. As the appellate court has not insight into the deliberations of the jury room, the presumption is to be indulged, in favor of the liberty of the citizen, that whatever the prosecutor, against the protest of the defendant, has laid before the jury, helped to make up the weight of the prosecution which resulted in the verdict of guilty."

*See also, State v. Frank,* 92 N.M. 456, 589 P.2d 1047 (1979).

Nor do we believe that the comments can be construed as simply a charge to the jury to enforce the law, as their responsibility to their fellow citizens. *See State v. Montoya,* 80 N.M. 64, 451 P.2d 557 (Ct.App.1968), *aff'd, Deats v. State,* 80 N.M. 77, 451 P.2d 981 (1969). In that case the comments were not objected to. Here there was an objection by defense counsel. We also think that the comments here are more serious than those considered in *Montoya* and *Deats.*

Before we can hold the misconduct harmless we must be able to say "that the evidence of guilt was so overwhelming that there is no reasonable probability that the misconduct contributed to the conviction." *Day.* We cannot say that here.

It is unfortunate that the young victim, for whom the incident has undoubtedly been emotionally devastating, should be put through another trial. However, we must consider that the defendant, sentenced to three years in the penitentiary, is entitled to a fair trial. The defendant's conviction is reversed and the case is remanded for a new trial.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.