731 P.2d 381
**STATE of New Mexico, Plaintiff-Appellant,**

v.

**Francisco GONZALES, Defendant-Appellee.**

No. 8737.

Court of Appeals of New Mexico.

May 8, 1986.
Certiorari Quashed Jan. 9, 1987.

Paul G. Bardacke, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Donald D. Montoya, Montoya, Murphy, Kauffman & Garcia, Santa Fe, Ron Koch Koch & Jones, P.A., Albuquerque, for defendant-appellee.

## OPINION

HENDLEY, Chief Judge.

The trial court granted defendant a new trial following his conviction for criminal sexual penetration in the second degree. The state appeals, raising the single issue of whether the trial court abused its discretion in granting defendant a new trial. We affirm.

### Facts

Defendant was charged with criminal sexual penetration. His first trial resulted in a hung jury, 7–5 for acquittal, and a mistrial was declared. After a second trial, the jury returned a verdict finding defendant guilty of second degree criminal sexual penetration. The trial court granted defendant's motions for new trial which alleged improper arguments of the prosecutor during closing summation to the jury.

The victim was employed as a legislative secretary during the legislative session at the Capitol in February 1985. During this time, defendant was a state senator and his office was located near the office where the victim worked. Defendant stayed at the same motel where the victim was registered.

During the early evening hours of February 23, 1985, defendant and the victim obtained a ride with a friend of defendant from the Capitol to the motel where both were residing. Each had separate rooms. The victim testified that, as she was opening the door to her motel room, defendant asked her if he could watch television in her room. She stated that she let defendant in, but informed him that he could only stay a while because she was expecting her aunt to arrive. She turned on the television, picked up a few items, and sat down on a chair. Defendant sat down on the bed.

The victim testified that defendant thereafter asked her how old and how tall she was. The victim told defendant her height and defendant approached her and said, "Let's see." Defendant threw his arms around the victim, pushed her onto the bed, and got on top of her. The victim told him, "This isn't right," and told him to get off of her. She tried to push him away. Defendant tried to kiss her, but she turned her head and attempted to push him away. The victim related that defendant told her to make love to him, but she responded she did not want to and again told him to release her.

During the direct examination of the defendant, his attorney asked him what he would have done if the victim had told him to "get off," "this isn't right," or "I'm going to report you to the police." Defendant replied, "I would have gotten off totally and I would have left, only because I wouldn't have wanted to jeopardize myself * * * *"

The victim testified that defendant pinned one of her arms and sought to undress her. She stated that with her free arm she tried to resist defendant's advances, but he removed her pants and forced her to have sexual intercourse. Thereafter, defendant left at the victim's request. The victim then contacted relatives and the Rape Crisis Center. The police were notified and she was taken to the hospital for an examination. There was physical evidence supporting the victim's version: the clasp on her slacks was bent at an angle; she had an abrasion on her thumb; and she had some vaginal trauma consistent with forced sexual intercourse. However, the bent clasp testimony depended on the credibility of the victim for a determination of when it was bent. Also, the doctor who testified to the trauma was impeached with his inconsistent testimony at the first trial.

After being confronted by the police, defendant admitted having sex with the victim, but claimed it was consensual. At trial, defendant testified there was no resistance from the victim, she never told him to "get off" or that she did not want to have sex with him. Defendant also testified that, if the victim had told him to get off or had indicated that she did not want to have sex, he would have immediately left her room. Defendant also testified he would not have raped anyone because of his family, "the position that I hold," and "also that I believe that sex should be consensual."

During closing argument, the prosecutor, referring to the testimony of the defendant, made the following statement:

Let's put something else out of the way. Senator Gonzales says, "I have too much to lose to do this." That is true of every politician up to the president of the United States when they do a bad act, an illegal act, they have too much to lose. They would have you believe that because they have a lot to lose that they wouldn't do it. Well, we know the contrary. Our experience is contrary. There's all sorts of people in high places * * * *

At this point, defense counsel objected, stating, "Your Honor, [the prosecutor] needs to argue the facts and evidence and not beyond." The trial court sustained the objection.

During rebuttal argument, another prosecutor made the following remark: "This is not slapping somebody around; this is not hitting somebody; this is not using a knife or a gun. That's a higher offense. That's not why we are here. We're here because he held her." Defense counsel objected upon the grounds that the latter statement was an incorrect statement of the law because the offense of committing criminal sexual penetration while armed with a deadly weapon does not constitute a higher offense than criminal sexual penetration with personal injury. The court responded, "I've instructed the jury and they will follow my instructions. Go ahead."

Defendant moved for a new trial on the basis of both comments, asserting the prosecutor had incorrectly instructed the jury, and contending the remarks were prejudicial and that the second statement left

the jury with the impression defendant was charged with a less serious offense than if he had used a weapon to commit the same offense.

The trial court did not impose sentence and, following a hearing on defendant's motions for new trial, granted defendant a new trial.

### Award of New Trial

In considering a motion for a new trial, the trial court is invested with a broad discretion. *State v. Volpato*, 102 N.M. 383, 696 P.2d 471 (1985); *Mares v. State*, 83 N.M. 225, 490 P.2d 667 (1971); *State v. Pope*, 78 N.M. 282, 430 P.2d 779 (Ct.App. 1967). After a verdict of guilty, the court on motion of defendant or on its own motion may grant a new trial if required in the interest of justice. NMSA 1978, Crim. P.R. 45 (Repl.Pamp.1985). The trial court's decision will be reversed only upon a showing of a clear and manifest abuse of discretion. *State v. Chavez*, 101 N.M. 136, 679 P.2d 804 (1984) (*Chavez II*); *State v. Romero*, 42 N.M. 364, 78 P.2d 1112 (1938).

A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances of the case. *State v. Simonson*, 100 N.M. 297, 669 P.2d 1092 (1983). An abuse of discretion is a decision that is clearly untenable. *State v. Hargrove*, 81 N.M. 145, 464 P.2d 564 (Ct.App.1970). A review of the action of the trial court in the exercise of its discretion does not depend upon whether the appellate court would have reached the same conclusion. *See Edington v. Alba*, 74 N.M. 263, 392 P.2d 675 (1964). *See also State v. Doe*, 100 N.M. 649, 674 P.2d 1109 (1983).

In ruling upon a motion for a new trial, however, there are limits upon the trial court's exercise of discretion. In *Chavez II*, our Supreme Court reversed an order of the trial court which granted a new trial, stating that the discretion of the court below is not unrestricted, and the discretion invested in the trial court does not permit it to reweigh the evidence or the credibility of witnesses. *See also State v. Chavez*, 98 N.M. 682, 652 P.2d 232 (1982) (*Chavez I*). *Chavez II* also established that a trial court could not grant a new trial on the basis of asserted legal error when there is, in fact, no legal error present.

Moreover, the state has a strong interest in enforcing a lawful jury verdict. *Chavez I*. Motions for new trials are not favored. *State v. Stephens*, 99 N.M. 32, 653 P.2d 863 (1982). New trials for purely technical reasons are against the public interest; they should be granted only for the correction of misconduct prejudicial to the accused. *State v. Evans*, 48 N.M. 58, 145 P.2d 872 (1944).

Thus, our cases suggest a two-step approach for the appellate court in reviewing the grant of a new trial: first, a determination of whether the grant of a new trial is based upon legal error; second, a determination of whether the error is substantial enough to warrant the exercise of the trial court's discretion. In our evaluation of each of these steps, we do not need to determine whether the error was of a magnitude necessary to require a reversal on appeal. If the trial court could grant a new trial only when the error is such as would compel a reversal on appeal, then the trial court would never have discretion to grant a new trial. Yet, our cases agree that the trial court does have discretion in the matter. For these reasons, reliance on cases upholding the trial court's decision not to award a new trial are not the most pertinent to our inquiry. Rather, we must engage in the two-step process outlined above.

### Legal Error

The excerpt from closing argument which invited comparison to other politicians was in part proper and in part improper. Of course, once defendant testified that he would not have raped anybody because of the position he held, this became a legitimate topic upon which to comment in closing argument. A prosecutor may comment on the evidence, and counsel is entitled to wide latitude in closing argu-

ment. *State v. Venegas*, 96 N.M. 61, 628 P.2d 306 (1981).

However, while the topic of comment was proper, the manner was not. The prosecutor invited comparison to the president of the United States and began to argue about facts not in evidence. The trial court was of the opinion that the argument conjured up images of Watergate and President Nixon. The prosecutor may not compare defendant to other wrongdoers not involved in the case. *See State v. Cummings*, 57 N.M. 36, 253 P.2d 321 (1953) (comment directed to the number of traffic deaths in New Mexico was improper in trial arising out of traffic death); *State v. Henderson*, 100 N.M. 519, 673 P.2d 144 (Ct.App.1983) ("true" story about a rape case was improper); *State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974) (reference to crime against a United States Senator was improper).

It is important to note that defendant did not seek to exonerate himself by associating himself with other politicians. He simply gave his personal reasons why he would not have committed the crime—his family and his position. The testimony about position did not open the door to comparison to other political office holders any more than the testimony about family would have opened the door to a supposedly true story of a good, family man acquitted of rape, when it later turned out that he was guilty. *See Henderson.*

▆ The comment concerning penalties was more improper. The prosecutor made a legally incorrect statement of the law when he told the jury the crime for which defendant was charged was less serious than committing the crime with a weapon. NMSA 1978, § 30–9–11(B) (Repl.Pamp. 1984). The court instructs on the law, and the prosecutor invades that province when he instructs on the law. *State v. Payne*, 96 N.M. 347, 630 P.2d 299 (Ct.App.1981), *overruled on other grounds, Buzbee v. Donnelly*, 96 N.M. 692, 634 P.2d 1244 (1981). This invasion becomes tainted when the instruction is incorrect. *State v. Diaz*, 100

N.M. 210, 668 P.2d 326 (Ct.App.1983). Moreover, the prosecutor has no business making argument concerning the penalties for offenses. *See State ex rel. Schiff v. Madrid*, 101 N.M. 153, 679 P.2d 821 (1984).

## Prejudice

Legal error having been established, it is next necessary to analyze whether the impact of the error was substantial enough to have called for the trial court's exercise of discretion. Although the trial court does not sit in the position of the "thirteenth juror," we recognize that any assessment of prejudice calls into play a balancing process which involves an assessment of the evidence both for and against the defendant. *See State v. Moore*, 94 N.M. 503, 612 P.2d 1314 (1980) (test for harmless error involves three inquiries which balance the strengths of the state's case against the strengths of defendant's case and the impact of the error). In addition to this balancing of the relative strengths of the cases, the possibility of cure must be evaluated. *See State v. Vialpando*, 93 N.M. 289, 599 P.2d 1086 (Ct.App.1979).

In this case, the trial court said, "The evidence of guilt is not overwhelming. The case was essentially a swearing match." The state agrees: "[T]his type of case often boils down to the jury's determination that it either believes the victim or it doesn't." In cases of a swearing match, the question is whether the impropriety could have tipped the balance. *State v. Ross*, 88 N.M. 1, 536 P.2d 265 (Ct.App. 1975). Improper matter that is not sufficient to impact on a stronger case against defendant may impact on a case that is a swearing match.

▆ The strength of the case against defendant will have a bearing on whether the impropriety was cured by instruction. *Vialpando.* The evidence in this case was not so overwhelming that there was no reasonable possibility that the improper argument did not contribute to the verdict. *Id. See also Henderson; Payne; State v.*

*Day,* 91 N.M. 570, 577 P.2d 878 (Ct.App. 1978).

Our cases have found it easier to cure impropriety which was inadvertently injected into the trial by a witness than impropriety which was injected into the trial by the prosecutor. *See Vialpando.* Compare also *State v. Ramirez,* 98 N.M. 268, 648 P.2d 307 (1982), *with State v. Baca,* 89 N.M. 204, 549 P.2d 282 (1976).

Finally, we evaluate the instructions given. No instruction was given with regard to the comment inviting comparison to other politicians. We recognize that none was sought. We also must take note of the fact that the trial court did not admonish the jury after defense counsel objected to the prosecutor's "higher offense" statement. Instead, the trial court said only that it had instructed the jury, and they would follow his instructions. There is no indication that this response, which is not even a ruling, was directed to the jury. We do note that an instruction was given on this topic later in the proceedings.

■ Thus, on the side of the state, we have the fact that the topic of the first comment was invited by defendant's testimony, the fact that defendant did not request timely cure, and the fact that the second comment was the subject of some instruction by the trial court. On the side of defendant, we have the fact that the comments were improper; the fact that the comments were made by the prosecutor, not a witness; the fact that the comments were not each neutralized by instruction or admonition; and the fact that this was a close case—a swearing match. Considering the definition of abuse of discretion and who bears the burden of demonstrating it, it cannot be said that the trial court's grant of a new trial was arbitrary or without reason.

The trial judge who sat through the entire trial, and who sat through the previous trial in this case, is in the best position to evaluate whether the court's instructions have the desired effect of curing any error. *See Rogers v. United States,* 411 F.2d 228

(10th Cir.1969); *State v. Jefferson,* 11 Wash.App. 566, 524 P.2d 248 (1974). This follows from our recognition that the trial court is in the best position to evaluate any possible prejudice. *Id.* There is a presumption of rectitude and regularity in the proceedings below. *State v. Deats,* 82 N.M. 711, 487 P.2d 139 (Ct.App.1971). An abuse of discretion is never presumed—it must be affirmatively established. *State v. Greene,* 92 N.M. 347, 588 P.2d 548 (1978). The burden is always on the appellant, in this case the state, to clearly point to any alleged error. *State v. Weber,* 76 N.M. 636, 417 P.2d 444 (1966).

For the foregoing reasons, we cannot say as a matter of law that the trial court clearly and manifestly abused its discretion in awarding a new trial.

Affirmed.

IT IS SO ORDERED.

FRUMAN, J., concurs.

DONNELLY, J., dissents.

DONNELLY, Judge (dissenting).

I respectfully dissent.

The award of a new trial was predicated upon two comments made by the prosecutor during closing arguments to the jury. Neither comment rose to the level of prejudicial error.

The first comment referred to defendant's testimony during trial, where he admitted having sexual intercourse with the prosecutrix, but denied that he had committed forcible rape because such act would have reflected adversely upon his wife and family, *"the position that I hold"* and because the use of force was contrary to his beliefs. [Emphasis added.] Referring to this testimony, the prosecutor stated in closing argument:

Let's put something else out of the way. Senator Gonzales says, "I have too much to lose to do this." That is true of every politician up to the president of the United States when they do a bad act, an illegal act, they have too much to lose. They would have you believe that be-

cause they have a lot to lose that they wouldn't do it. Well, we know to the contrary. Our experience is contrary. There's all sorts of people in high places.

Defendant objected to this comment and the trial court promptly sustained the objection.

The prosecutor, as well as the defense, is allowed wide latitude in commenting on the evidence during closing argument. *State v. Venegas,* 96 N.M. 61, 628 P.2d 306 (1981); *State v. Ruffino,* 94 N.M. 500, 612 P.2d 1311 (1980); *State v. Anaya,* 79 N.M. 43, 439 P.2d 561 (Ct.App.1968). The prosecutor is allowed to refer during closing arguments, to statements and facts in the evidence, together with reasonable inferences deductible therefrom. *State v. Molina,* 101 N.M. 146, 679 P.2d 814 (1984); *State v. Herrera,* 84 N.M. 46, 499 P.2d 364 (Ct.App.1972). When defendant's own testimony directly alluded to his official position, and placed before the jury the suggestion that he did not commit the charged offense because of the "position" held by him, the prosecutor's reference to defendant's remark did not constitute prejudicial error. Defendant initially raised this issue and placed it before the jury. Under these facts defendant opened the door to the state's comment. *See State v. Cordova,* 100 N.M. 643, 674 P.2d 533 (Ct.App.1983); *State v. Jaramillo,* 88 N.M. 60, 537 P.2d 55 (Ct.App.1975). The prosecution comment did not exceed the scope of permissible closing argument.

Moreover, under the facts herein, any alleged prejudice to defendant resulting from the statement was neutralized by the ruling of the trial court. In the instant case, the trial court sustained defendant's objection to the prosecutor's comment. Defendant did not request the trial court to admonish the jury to disregard the statement. The prompt sustaining of the objection cured any claim of prejudice. *See State v. Duran,* 83 N.M. 700, 496 P.2d 1096 (Ct.App.1972); *see also State v. Simonson,* 100 N.M. 297, 669 P.2d 1092 (1983); *State v. Vialpando,* 93 N.M. 289, 599 P.2d 1086 (Ct.App.1979).

During the state's rebuttal argument, the prosecutor also stated that in committing the offense, defendant did not use "a knife or a gun * * * that's a higher offense * * * * that's not why we are here. We're here because he held her." Defense counsel objected on the grounds that the statement was an incorrect statement of the law, and that committing sexual penetration while armed with a weapon was not a higher offense. The trial court in response to the objection, observed that it had instructed the jury as to the law and "they will follow my instructions." Following the jury verdict, defendant argued that this second remark also warranted the award of a new trial. The trial court agreed.

This argument of the prosecutor was ambiguous. Defendant was charged with second degree criminal sexual penetration. The trial court also instructed the jury as to the lesser included offense of third degree criminal sexual penetration. *See* NMSA 1978, § 30–9–11(C) (Repl.Pamp. 1984). During rebuttal argument, the prosecutor discussed elements of both the charged offense and the lesser included offense. This remark of the prosecutor was not an erroneous statement insofar as it referred to the lesser included offense of third degree criminal sexual penetration. The prosecution argument discussed both jury instructions. Moreover, not every inaccurate statement by a prosecutor, or inadvertent misstatement of the law made during closing argument, mandates a new trial. *United States v. Chapman,* 615 F.2d 1294 (10th Cir.1980). Misstatements in closing arguments do not require an award of new trial unless the remark prejudiced defendant to the extent that he was denied a fair trial. *State v. Jefferson,* 11 Wash.App. 566, 524 P.2d 248 (1974). The comment was not prejudicial. The prosecutor's remark expressly disclaimed the use of any weapon and emphasized the state's contention that force had been used.

A new trial is not required where viewed the totality of the circumstances, together with the reasonable inferences to be drawn

from the evidence, the statements, even if erroneous, were not prejudicial. *See Commonwealth v. Mandeville*, 386 Mass. 393, 436 N.E.2d 912 (1982); *Commonwealth v. Dennis*, 313 Pa.Super. 415, 460 A.2d 255 (1983).

In determining whether a motion for a new trial, based upon comments of the prosecutor, should be granted, the test is whether defendant was prejudiced by the remark, and the prejudice deprived the defendant of a fair trial. *State v. White*, 101 N.M. 310, 681 P.2d 736 (Ct.App.1984); *State v. Ruffino*. To be reversible, error must be prejudicial. *State v. Wright*, 84 N.M. 3, 498 P.2d 695 (Ct.App.1972); *State v. Orzen*, 83 N.M. 458, 493 P.2d 768 (Ct.App.1972). A party asserting prejudice has the burden of demonstrating that he was prejudiced by the claimed error. *See State v. Garcia*, 93 N.M. 51, 596 P.2d 264 (1979); *State v. Evans*, 48 N.M. 58, 145 P.2d 872 (1944).

The trial court gave NMSA 1978, UJI Crim. 50.06 (Repl.Pamp.1982), instructing the jury that it was not to consider the consequences of its verdict. Similarly, the trial court gave NMSA 1978, UJI Crim. 1.04 (Repl.Pamp.1982), advising the jury that what is said in the arguments did not constitute evidence. The trial court also properly instructed the jury both as to the elements of the charged offense, and the lesser included offense. *See* NMSA 1978, UJI Crim. 9.46 (Repl.Pamp.1982); *see also* NMSA 1978, UJI Crim. 9.40 (Repl.Pamp.

1982). Under these circumstances, the prosecutor's second remark did not reach the level of prejudicial error. The trial court gave instructions which neutralized any deleterious effect from this comment. *See State v. Moore*, 94 N.M. 503, 612 P.2d 1314 (1980).

Misstatements in arguments do not require the award of a new trial unless the statements are of such dimension as to prejudice defendant's right to a fair trial, and the effect of the statements have not been neutralized by the trial judge. *United States v. Rich*, 580 F.2d 929 (9th Cir. 1978). Motions for a new trial are not favored. *State v. Stephens*, 99 N.M. 32, 653 P.2d 863 (1982). An award of a new trial where the basis relied upon did not deprive the accused of a fair trial, constitutes an abuse of the trial court's discretion. *See State v. Chavez*, 101 N.M. 136, 679 P.2d 804 (1984). A jury verdict should be set aside only upon a showing of prejudicial error. The arguments of the prosecutor did not warrant the granting of a new trial.

The order granting the new trial should be reversed.